# Supreme Court of Florida

_____

No. SC15-780
_____

**ADVISORY OPINION TO THE ATTORNEY GENERAL RE: LIMITS OR PREVENTS BARRIERS TO LOCAL SOLAR ELECTRICITY SUPPLY.**

_____

No. SC15-890
_____

**ADVISORY OPINION TO THE ATTORNEY GENERAL RE: LIMITS OR PREVENTS BARRIERS TO LOCAL SOLAR ELECTRICITY SUPPLY (FINANCIAL IMPACT STATEMENT).**

[October 22, 2015]

PER CURIAM.

The Attorney General of Florida has petitioned this Court for an advisory opinion as to the validity of a citizen initiative amendment to the Florida Constitution, titled "Limits or Prevents Barriers to Local Solar Electricity Supply," and the corresponding Financial Impact Statement submitted by the Financial Impact Estimating Conference. The constitutional amendment is being proposed by Floridians for Solar Choice, Inc. (the "Sponsor"), pursuant to article XI, section

3, of the Florida Constitution. We have jurisdiction. See art. IV, § 10, art. V, § 3(b)(10), Fla. Const.

This Court's review of the amendment is limited to two issues. First, we must determine if the proposed amendment meets the requirements of article XI, section 3, Florida Constitution, which provides that "any such revision or amendment, except for those limiting the power of government to raise revenue, shall embrace but one subject and matter directly connected therewith." Second, we must determine if the ballot title and summary satisfy the requirements of section 101.161(1), Florida Statutes (2014). That statute provides that when a constitutional amendment is submitted to the vote of the people, "a ballot summary of such amendment . . . shall be printed in clear and unambiguous language on the ballot." § 101.161(1), Fla. Stat. Section 101.161(1) also mandates that the ballot summary of the amendment "shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure." § 101.161(1), Fla. Stat. The ballot shall also include a separate Financial Impact Statement concerning the measure prepared by the Financial Impact Estimating Conference according to the requirements of section 100.371(5), Florida Statutes (2014). See § 101.161(1), Fla. Stat.; § 100.371(5), Fla. Stat.

As we explain, we conclude that that proposed amendment embraces a single subject and matter directly connected therewith, and that the ballot summary

explaining the chief purpose of the measure is not clearly and conclusively defective. We also conclude that the accompanying Financial Impact Statement complies with section 100.371(5), Florida Statutes. Accordingly, we approve the proposed amendment and Financial Impact Statement for placement on the ballot so long as the remaining requirements of article XI, section 3, of the Florida Constitution, are met.[1]

## I. BACKGROUND

On April 24, 2015, the Attorney General petitioned this Court for an opinion as to the validity of an initiative petition sponsored by Floridians for Solar Choice, Inc., pursuant to article XI, section 3, of the Florida Constitution. The sponsor submitted a brief supporting the validity of the initiative petition. The Attorney General submitted a brief in opposition, as did the Florida Chapter of the National Congress of Black Women, Inc.; the Orlando Utilities Commission; the National Black Chamber of Commerce;

---

1. Article XI, section 3, Florida Constitution, also requires that the sponsor file "with the custodian of state records a petition containing a copy of the proposed revision or amendment, signed by a number of electors in each of one half of the congressional districts of the state, and of the state as a whole, equal to eight percent of the votes cast in each of such districts respectively and in the state as a whole in the last preceding election in which presidential electors were chosen."

the Florida State Hispanic Chamber of Commerce; the Florida Chamber of Commerce; the Florida Electric Cooperatives Association, Inc.; Florida Power & Light Company, Duke Energy Florida, Gulf Power Company, and Tampa Electric Company; the City of Coral Gables; the Florida Council for Safe Communities; and the Florida League of Cities, Inc., and Florida Municipal Electric Association, Inc.

The amendment proposed by Floridians for Solar Choice, Inc., would add the following new section 29 to article X of the Florida Constitution:

ARTICLE X, SECTION 29. Purchase and sale of solar electricity.—
(a) PURPOSE AND INTENT. It shall be the policy of the state to encourage and promote local small-scale solar-generated electricity production and to enhance the availability of solar power to customers. This section is intended to accomplish this purpose by limiting and preventing regulatory and economic barriers that discourage the supply of electricity generated from solar energy sources to customers who consume the electricity at the same or a contiguous property as the site of the solar electricity production. Regulatory and economic barriers include rate, service and territory regulations imposed by state or local government on those supplying such local solar electricity, and imposition by electric utilities of special rates, fees, charges, tariffs, or terms and conditions of service on their customers consuming local solar electricity supplied by a third party that are not imposed on their other customers of the same type or class who do not consume local solar electricity.
(b) PURCHASE AND SALE OF LOCAL SMALL-SCALE SOLAR ELECTRICITY.
(1) A local solar electricity supplier, as defined in this section, shall not be subject to state or local government regulation with respect to rates, service, or territory, or be subject to any assignment, reservation, or division of service territory between or among electric utilities.

(2)  No electric utility shall impair any customer's purchase or consumption of solar electricity from a local solar electricity supplier through any special rate, charge, tariff, classification, term or condition of service, or utility rule or regulation, that is not also imposed on other customers of the same type or class that do not consume electricity from a local solar electricity supplier.

(3)  An electric utility shall not be relieved of its obligation under law to furnish service to any customer within its service territory on the basis that such customer also purchases electricity from a local solar electricity supplier.

(4)  Notwithstanding paragraph (1), nothing in this section shall prohibit reasonable health, safety and welfare regulations, including, but not limited to, building codes, electrical codes, safety codes and pollution control regulations, which do not prohibit or have the effect of prohibiting the supply of solar-generated electricity by a local solar electricity supplier as defined in this section.

(c)  DEFINITIONS.  For the purposes of this section:

(1)  "local solar electricity supplier" means any person who supplies electricity generated from a solar electricity generating facility with a maximum rated capacity of no more than 2 megawatts, that converts energy from the sun into thermal or electrical energy, to any other person located on the same property, or on separately owned but contiguous property, where the solar energy generating facility is located.

(2)  "person" means any individual, firm, association, joint venture, partnership, estate, trust, business trust, syndicate, fiduciary, corporation, government entity, and any other group or combination.

(3)  "electric utility" means every person, corporation, partnership, association, governmental entity, and their lessees, trustees, or receivers, other than a local solar electricity supplier, supplying electricity to ultimate consumers of electricity within this state.

(4)  "local government" means any county, municipality, special district, authority, or any other subdivision of the state.

(d)  ENFORCEMENT AND EFFECTIVE DATE.  This amendment shall be effective on January 3, 2017.

The ballot title for the proposed amendment, which is limited by law to

fifteen words, is stated as "Limits or Prevents Barriers to Local Solar Electricity

Supply." The ballot summary, which is limited by law to seventy-five words, states:

> Limits or prevents government and electric utility imposed barriers to supplying local solar electricity. Local solar electricity supply is the non-utility supply of solar generated electricity from a facility rated up to 2 megawatts to customers at the same or contiguous property as the facility. Barriers include government regulation of local solar electricity suppliers' rates, service and territory, and unfavorable electric utility rates, charges, or terms of service imposed on local solar electricity customers.

On May 7, 2015, the Financial Impact Estimating Conference forwarded to the Attorney General the following financial impact statement regarding the initiative petition:

> Based on current laws and administration, the amendment will result in decreased state and local government revenues overall. The timing and magnitude of these decreases cannot be determined because they are dependent on various technological and economic factors that cannot be predicted with certainty. State and local governments will incur additional costs, which will likely be minimal and partially offset by fees.

The sponsor submitted a brief supporting the validity of the financial impact statement and its compliance with section 100.371(5), Florida Statutes. Florida Power & Light Company, jointly with Duke Energy Florida, Gulf Power Company, and Tampa Electric Company, also submitted a brief agreeing that the financial impact statement complied with section 100.371(5), Florida Statutes. We begin by setting forth our standard of review for this citizen initiative proposal.

## II. STANDARD OF REVIEW

This Court applies a deferential standard of review to the validity of a citizen initiative petition. In re Advisory Op. to the Att'y Gen. re Use of Marijuana for Certain Med. Conditions, 132 So. 3d 786, 794 (Fla. 2014). We are reluctant to interfere with Florida citizens' right to formulate "their own organic law" by self-determination. Id. (quoting Advisory Op. to Att'y Gen. re Right to Treatment & Rehab. for Non-Violent Drug Offenses, 818 So. 2d 491, 494 (Fla. 2002)). Thus, we abide by the principle that "[s]overeignty resides in the people and the electors have a right to approve or reject a proposed amendment to the organic law of this State, limited only by those instances where there is an entire failure to comply with a plain and essential requirement." Id. (quoting Pope v. Gray, 104 So. 2d 841, 842 (Fla. 1958)).

As noted earlier, in determining the validity of an amendment to the constitution arising from a citizen's initiative, this Court examines two requirements: (1) the ballot title and summary must satisfy the requirements of section 101.161(1), Florida Statutes; and (2) the proposed amendment must satisfy the single-subject requirement of article XI, section 3, of the Florida Constitution. Use of Marijuana for Certain Med. Conditions, 132 So. 3d at 795. As this Court has stated:

> In addressing these two issues, our inquiry is governed by
> several general principles. First, we do not consider or address the

merits or wisdom of the proposed amendment. Second, "[t]he Court must act with extreme care, caution, and restraint before it removes a constitutional amendment from the vote of the people." Specifically, where citizen initiatives are concerned, "[the] Court has no authority to inject itself in the process, unless the laws governing the process have been 'clearly and conclusively' violated." Hence, our review is narrow and limited to the two questions set out above.

In re Advisory Op. to the Att'y Gen. re Fairness Initiative Requiring Legislative Determination that Sales Tax Exemptions & Exclusions Serve a Pub. Purpose, 880 So. 2d 630, 633 (Fla. 2004) (citations omitted). Thus, without considering or addressing the merits or wisdom of the proposed amendment, we turn first to determine if the amendment meets the single-subject requirement of article XI, section 3, of the Florida Constitution.

## III. SINGLE-SUBJECT REQUIREMENT

The single-subject requirement is at its base a "rule of restraint" designed to protect Florida's organic law from "precipitous and cataclysmic change." In re Advisory Op. to Att'y Gen.—Save Our Everglades, 636 So. 2d 1336, 1339 (Fla. 1994). The single-subject requirement protects against two things. First, it prevents "logrolling," in which several separate issues are combined in a single initiative to attempt to secure approval of not only a popular issue but also "an otherwise unpopular issue" that is included in the same proposal. See Use of Marijuana for Certain Med. Conditions, 132 So. 3d at 795 (quoting Save Our Everglades, 636 So. 2d at 1339). Of the several different ways in which the

Florida Constitution provides for amendment, "[o]nly the initiative process in section 3 contains the restrictive language that 'any such revision or amendment shall embrace but one subject and matter directly connected therewith.' " Save Our Everglades, 636 So. 2d at 1339 (quoting Fine v. Firestone, 448 So. 2d 984, 988 (Fla. 1984)). The inclusion of the single-subject requirement recognizes that only the citizen's initiative process—as contrasted with the legislative joint resolution process, the constitutional revision commission process, or the constitutional convention process—lacks the "filtering" process for carefully considered drafting and the public hearing process contained in those other methods of amendment or revision. Save Our Everglades, 636 So. 2d at 1339 (quoting Fine, 448 So. 2d at 988). For these reasons, this Court is called upon to provide careful scrutiny of the initiative proposal to ensure that it meets the constitutional single-subject requirement.

The opponents of the initiative in this case contend, first, that the proposed amendment violates the single-subject requirement by impermissibly logrolling several separate subjects, some of which certain voters may view favorably and others of which those same voters may view unfavorably, thus forcing the voters to choose whether to accept an unfavorable provision in order to secure another desired one. To comply with the single-subject requirement, and to avoid this impermissible logrolling, a citizen initiative amendment "must manifest 'a logical

and natural oneness of purpose.' " Advisory Op. to Att'y Gen. re Fla. Marriage

Prot. Amend., 926 So. 2d 1229, 1233 (Fla. 2006).  We have explained:

> In addressing the issue of logrolling, this Court determines whether the amendment manifests a "logical and natural oneness of purpose." Advisory Op. to Att'y Gen. re Fla.'s Amendment to Reduce Class Size, 816 So. 2d 580, 582 (Fla. 2002) (quoting Fine v. Firestone, 448 So. 2d 984, 990 (Fla. 1984)).  A proposed amendment meets this test when it "may be logically viewed as having a natural relation and connection as component parts or aspects of a single dominant plan or scheme.  Unity of object and plan is the universal test." Fine, 448 So. 2d at 990 (quoting City of Coral Gables v. Gray, 154 Fla. 881, 19 So. 2d 318, 320 (1944)).

Advisory Op. to Att'y Gen. re: Indep. Nonpartisan Comm'n to Apportion

Legislative & Cong. Dists. Which Replaces Apportionment by Legislature, 926 So.

2d 1218, 1225 (Fla. 2006).

Although the proposed amendment contains a number of provisions—some

dealing with economic barriers to supply of solar electricity and others dealing

with government regulation with respect to rates, service, or territory—the logical

and natural oneness of purpose of the amendment remains the same.  The various

provisions are all directly connected to the amendment's purpose—and its

dominant plan or scheme—and, thus, the proposed amendment does not engage in

impermissible logrolling.  The proposed amendment states in its "PURPOSE AND

INTENT" section that regulatory and economic barriers to be prohibited include:

> rate, service and territory regulations imposed by state or local government on those supplying such local solar electricity, and imposition by electric utilities of special rates, fees, charges, tariffs, or

- 10 -

terms and conditions of service on their customers consuming local solar electricity supplied by a third party that are not imposed on their other customers of the same type or class who do not consume local solar electricity.

The remainder of the proposed amendment spells out in greater detail what barriers and regulations will be prohibited and what barriers will be limited by the amendment in carrying out the stated purpose and intent. This amendment accomplishes a "oneness of purpose," while also providing that the exemptions from regulation do not include reasonable health, safety, and welfare regulations that do not prohibit or have the effect of prohibiting the supply of solar-generated electricity as allowed by the amendment.

We conclude that the proposed amendment has a "logical and natural oneness of purpose" to remove legal and regulatory barriers to local solar electricity suppliers who seek to supply and sell up to 2 megawatts of solar generated electricity to purchasers on the same or contiguous property to the supplier. This is the dominant plan or scheme that the various provisions of the amendment accomplish by exempting such a local solar electricity supplier from state or local government regulation with respect to rates, service, or territory, and by removing or limiting other regulatory barriers to provision of the solar generated electricity provided for in the proposal. The provisions "encompass[] a single plan and merely enumerate[] various elements necessary to accomplish the plan." Use of Marijuana for Certain Med. Conditions, 132 So. 3d at 796 (quoting

Advisory Op. to Att'y Gen. re Standards for Establishing Legislative Dist. Boundaries, 2 So. 3d 175, 182 (Fla. 2009)).

We recognize that "enfolding disparate subjects within the cloak of a broad generality does not satisfy the single-subject requirement." Advisory Op. to Att'y Gen.—Restricts Laws Related to Discrimination, 632 So. 2d 1018, 1020 (Fla. 1994) (quoting Evans v. Firestone, 457 So. 2d 1351, 1353 (Fla. 1984)). In Evans, we struck an initiative from the ballot that proposed to establish citizens' rights in civil actions for several reasons, including that one of the provisions was not "directly connected" to the other two provisions. 457 So. 2d at 1354. However, we find that the various provisions of the proposed amendment in this case are not "disparate subjects" and instead are directly connected to the purpose of the amendment and to each other.

The second question for our determination is whether the proposal violates the single-subject requirement by substantially altering or performing the functions of multiple branches of state government. See Advisory Op. to Att'y Gen. re Fla. Transp. Initiative for Statewide High Speed Monorail, Fixed Guideway or Magnetic Levitation Sys., 769 So. 2d 367, 369 (Fla. 2000). We conclude that the amendment in this case does not run afoul of this requirement. We have explained that "[a]lthough a proposal may affect several branches of government and still pass muster, no single proposal can substantially alter or perform the functions of

- 12 -

multiple branches." Save Our Everglades, 636 So. 2d at 1340 (footnote omitted). See also Advisory Op. to Att'y Gen. re Funding of Embryonic Stem Cell Research, 959 So. 2d 195, 198 (Fla. 2007). As we reiterated in Save Our Everglades, "We have found proposed amendments to meet the single-subject requirement even though they affected multiple branches of government." 636 So. 2d at 1340 n.1 (emphasis added) (quoting Advisory Op. to Att'y Gen.—Limited Political Terms in Certain Elective Offices, 592 So. 2d 225, 227 (Fla. 1991)).

The opponents contend that the proposal is invalid because it would impact both state and local governments by removing some regulatory authority from both, by establishing state policy relating to solar electricity supply, and by limiting the Legislature's authority. However, the opponents do not indicate how this amendment will interfere with or take over the state's energy policy. Moreover, a proposed amendment will not fail simply because it affects several branches of government; rather, it will fail if the proposal "substantially alters or performs the functions of multiple branches" of government. Use of Marijuana for Certain Med. Conditions, 132 So. 3d at 795. The amendment, to fail this test, must alter or perform the functions of multiple branches of government and thereby cause "precipitous" or "cataclysmic" changes to the government structure. See Live Human Embryo, 959 So. 2d at 213 (citing Advisory Op. to Att'y Gen. re Additional Homestead Tax Exemption, 880 So. 2d 646, 650 (Fla. 2000)).

- 13 -

Although we recognize that the proposed amendment would limit the authority of the Legislature and other governmental entities to regulate in certain areas relating to the non-utility solar providers created under the amendment, we conclude that the amendment does not substantially alter or perform the functions of multiple branches of government producing "precipitous" or "cataclysmic" changes. For the reasons set forth above, we hold that the proposed citizen initiative amendment does not violate the single-subject requirement of article XI, section 3, of the Florida Constitution. We turn next to the question of whether the ballot title and summary comply with the requirements of section 101.161, Florida Statutes.

## IV. BALLOT TITLE AND SUMMARY

Section 101.161(1), Florida Statutes, provides in pertinent part that the substance of the amendment shall be "printed in clear and unambiguous language on the ballot" and that the "summary of the amendment . . . shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure." This "clear and unambiguous" requirement "ensures that a voter has notice of the subject matter and issues addressed by the proposed amendment." Live Human Embryo, 959 So. 2d at 213. We must also consider the question of whether the language of the ballot title and summary will affirmatively be misleading. Use of Marijuana for Certain Med. Conditions, 132 So. 3d at 797. Thus, the ballot

- 14 -

summary must set forth the "chief purpose of the amendment" and may not mislead the voter. See Live Human Embryo, 959 So. 2d at 213-14.

The ballot title and summary must each "stand on its own merits and not be disguised as something else." Askew v. Firestone, 421 So. 2d 151, 156 (Fla. 1982). The ballot title and summary may not " 'fly under false colors' or 'hide the ball' with regard to the true effect of an amendment." Fla. Dep't of State v. Slough, 992 So. 2d 142, 147 (Fla. 2008) (quoting Armstrong v. Harris, 773 So. 2d 7, 16 (Fla. 2000)). The purpose of this requirement is "to assure that the electorate is advised of the true meaning, and ramifications, of an amendment." Askew, 421 So. 2d at 156. However, there is no requirement that the ballot summary explain its complete terms "at great and undue length." Right to Treatment & Rehab. for Non-Violent Drug Offenses, 818 So. 2d at 498 (quoting Metro. Dade Cty. v. Shiver, 365 So. 2d 210, 213 (Fla. 3d DCA 1978)). We have noted that such a requirement would actually hamper rather than aid the intelligent exercise of the voting privilege. Id.

After careful scrutiny of the text of the ballot title and summary, and the text of the amendment, and after consideration of all the arguments of counsel, we conclude that the ballot title and summary in this case do not run afoul of these requirements. Without considering the merits of the measure, we find that the title and summary clearly and unambiguously inform the voter that the amendment will

- 15 -

prevent government and electric utilities from imposing regulatory barriers to supplying local solar electricity up to 2 megawatts to customers at the same or contiguous property. The summary explains that the regulations which will be limited or prevented include government regulation of local solar electricity suppliers' rates, service and territory, and unfavorable electricity rates, charges, or terms of service. Although the phrase "unfavorable electricity rates, charges, or terms of service" is not defined in the ballot summary, it can fairly be said to reflect that portion of the amendment that prohibits an electric utility from imposing on a local solar electricity supplier's customer "any special rate, charge, tariff, classification, term or condition of service, or utility rule or regulation, that is not also imposed on other customers of the same type or class that do not consume electricity from a local solar electricity supplier." Thus, the phrase is not ambiguous or misleading.

By reading the ballot title and summary, the voter will be informed that government regulations—by both local government and state government—which would impede or impair the provision of local solar electricity will be limited, and that some such regulations will be completely prevented. Further, the summary informs the voter that under the amendment, the solar electricity supply will be a "non-utility" supply. This informs the voter that such a provider will not be

subject to at least some of the regulations that currently apply to a public "utility."[2]

Again, without considering the merits of such changes in the law governing utilities, we must conclude the ballot title and summary are not ambiguous or misleading, and do inform the voter of the changes that would be implemented under the amendment.

As we have said many times, our "duty is to uphold the proposal unless it can be shown to be 'clearly and conclusively defective.' " Use of Marijuana for Certain Med. Conditions, 132 So. 3d at 795 (quoting In re Advisory Op. to Att'y Gen. re Florida's Amend. to Reduce Class Size, 816 So. 2d 580, 582 (Fla. 2002)); see also Advisory Op. to Att'y Gen. re Med. Liab. Claimant's Comp. Amend., 880 So. 2d 675, 676 (Fla. 2004). We conclude that this high threshold has not been met. The proposal has not been shown to be "clearly and conclusively defective" in any respect. For these reasons, the ballot title and summary are approved for placement on the ballot. However, we must also determine if the Financial Impact Statement meets the requirements of article XI, section 5(c), Florida Constitution, and section 100.371(5)(a), Florida Statutes.

---

2. Florida law currently defines "public utility" to be "every person, corporation, partnership, association, or other legal entity . . . . supplying electricity . . . to or for the public within this state." § 366.02(1), Fla. Stat. (2014). However, that definition excludes certain cooperatives, municipalities, and others.

## V. FINANCIAL IMPACT STATEMENT

The Florida Constitution mandates that our advisory opinion address the Financial Impact Statement. See Use of Marijuana for Certain Med. Conditions, 132 So. 3d at 809. Article XI, section 5(c), of the Florida Constitution, states that "[t]he legislature shall provide by general law, prior to the holding of an election pursuant to this section, for the provision of a statement to the public regarding the probable financial impact of any amendment proposed by initiative pursuant to section 3" of article XI of the Constitution. The Legislature implemented this mandate by enactment of section 100.371(5)(a), Florida Statutes, which requires that within forty-five days after receipt by the Secretary of State of a proposed amendment to the state constitution by initiative petition, "the Financial Impact Estimating Conference shall complete an analysis and financial impact statement to be placed on the ballot of the estimated increase or decrease in any revenues or costs to state or local governments resulting from the proposed initiative." § 100.371(5)(a), Fla. Stat. The Financial Impact Statement must be clear and unambiguous, and no more than 75 words in length. § 100.371(5)(b)2., Fla. Stat.

Our review of the Financial Impact Statement is narrow and only addresses "whether the statement is clear, unambiguous, consists of no more than seventy-five words, and is limited to address the estimated increase or decrease in any revenues or costs to the state or local governments." Advisory Op. to Att'y Gen. re

- 18 -

Referenda Required for Adoption & Amend. of Local Gov't Comprehensive Land Use Plans, 963 So. 2d 210, 214 (Fla. 2007). We conclude that the Financial Impact Statement in this case meets these requirements. As noted earlier, the Financial Impact Statement for the proposed amendment states:

> Based on current laws and administration, the amendment will result in decreased state and local government revenues overall. The timing and magnitude of these decreases cannot be determined because they are dependent on various technological and economic factors that cannot be predicted with certainty. State and local governments will incur additional costs, which will likely be minimal and partially offset by fees.

The Financial Impact Statement is sixty-two words in length, which complies with the statutory word limit. The statement addresses only the estimated increase or decrease in revenues and costs to state and local governments. It clearly and unambiguously states that there will be decreased revenues for state and local governments and that the fees may offset a portion of any increased costs. The statement also clearly and unambiguously explains that timing and magnitude of the decreased revenues could not be determined because of various technological and economic factors. "[T]he financial impact statement is necessarily indefinite but not unclear or ambiguous." Advisory Op. to Att'y Gen. re Fla. Growth Mgmt. Initiative Giving Citizens the Right to Decide Local Growth Mgmt. Plan Changes, 2 So. 3d 118, 124 (Fla. 2008). Further, the fact that the Financial Impact Estimating Conference is unable to determine the actual financial impact does not

render the Financial Impact Statement invalid.  See Florida Marriage Prot. Amend., 926 So. 2d at 1241.  For these reasons, we hold that the Financial Impact Statement meets the requirements of law.

## VI.  CONCLUSION

For the reasons set forth above, we conclude that the initiative petition and ballot title and summary meet the legal requirements of article XI, section 3, Florida Constitution, and section 101.161(1), Florida Statutes.  Further, the Financial Impact Statement complies with section 100.371(5), Florida Statutes.  Therefore, we approve the proposed amendment and Financial Impact Statement for placement on the ballot.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, and PERRY, JJ., concur.
POLSTON, J., concurs in part and dissents in part with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

POLSTON, J., concurring in part and dissenting in part.

I concur with the majority's conclusion that the initiative in this case does not violate the single-subject requirement.  However, because I conclude that the ballot summary is confusing and does not accurately describe the scope of the proposed amendment, I would not approve the initiative for placement on the ballot.

Section 101.161(1), Florida Statutes (2014), provides the following clarity requirements for the ballot summary:

> The ballot summary of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. . . .

The purpose of these requirements is "to provide fair notice of the content of the proposed amendment so that the voter will not be misled as to its purpose, and can cast an intelligent and informed ballot." Advisory Op. to Att'y Gen. re Term Limits Pledge, 718 So. 2d 798, 803 (Fla. 1998).

This Court's review of the validity of a ballot title and summary under section 101.161(1) involves two inquiries:

> First, the Court asks whether "the ballot title and summary . . . fairly inform the voter of the chief purpose of the amendment." [Advisory Op. to Att'y Gen. re] Right to Treatment and Rehabilitation for Non-Violent Drug Offenses, 818 So. 2d [491, 497 (Fla. 2002)]. Second, the Court asks "whether the language of the title and summary, as written, misleads the public." Advisory Op. to Att'y Gen. re Right of Citizens to Choose Health Care Providers, 705 So. 2d 563, 566 (Fla. 1998).

Advisory Op. to the Att'y Gen. re Fairness Initiative Requiring Leg. Determination That Sales Tax Exemptions & Exclusions Serve a Public Purpose, 880 So. 2d 630, 635-36 (Fla. 2004). As this Court has explained, "a ballot title and summary cannot 'fly under false colors' or 'hide the ball' with regard to the true effect of an amendment." Fla. Dep't of State v. Slough, 992 So. 2d 142, 147 (Fla. 2008). "When the summary of a proposed amendment does not accurately describe the

- 21 -

scope of the text of the amendment, it fails in its purpose and must be stricken."

Term Limits Pledge, 718 So. 2d at 804.

Here, the ballot summary is confusing and does not accurately inform the voter of the true effect of the proposed amendment. For example, the ballot summary states that the proposed amendment "[l]imits or prevents government and electric utility imposed barriers to supplying local solar electricity." However, this language does not clearly explain to the voter the scope of the limitation to government regulation involved. In fact, the text of the amendment only permits "health, safety and welfare regulations, including, but not limited to, building codes, electrical codes, safety codes and pollution control regulations" if such regulations "do not prohibit or have the effect of prohibiting the supply of solar-generated electricity by a local solar electricity supplier." Therefore, the proposed amendment would override any state or local health, safety, or welfare regulation if (presumably in the sole judgment of the solar electricity supplier) the regulation would "have the effect of prohibiting the supply of solar-generated electricity." For example, the Department of Environmental Protection and the water management districts could not enforce laws and regulations designed to protect wildlife habitat, wetlands, and water resources if they would "have the effect of prohibiting" the siting of a local solar electricity generating facility within areas where such protections would apply. Likewise, local governments would be

prohibited from enforcing wind resistance ordinances if a solar supplier claimed its facilities could not economically meet those standards. Even local government land development codes, architectural review board regulations, deed covenants, and condominium and homeowners' association restrictions would be unenforceable if deemed prohibitively problematic by a solar supplier.

The ballot summary also misleads the voter by stating that the proposed amendment addresses "non-utility" electric providers when, under current law, all electric providers are regulated as public utilities. Specifically, the ballot summary states that "[l]ocal solar electricity supply is the non-utility supply of solar generated electricity from a facility rated up to 2 megawatts to customers at the same or contiguous property as the facility." The summary does not inform the voter that this would be a change in the law, and the text of the proposed amendment is what redefines "electric utility" to exclude "a local solar electricity supplier."

By redefining "electric utility," the proposed amendment removes solar suppliers from the jurisdiction of the Public Service Commission (PSC) and the protections the PSC provides. The PSC is a separate body with comprehensive regulatory authority, and it supervises and regulates public utilities to ensure affordable rates, safe practices, and quality service throughout the State. See ch. 366, Florida Statutes (2014). The ballot summary does not inform the voter that

the proposed amendment creates a new and limited class of electricity sellers that would not be subject to PSC regulation with respect to rates, service, or territory. These solar suppliers, unregulated by the PSC, would also (as explained above) be exempt from reasonable health, safety, and welfare regulations if they would "have the effect of prohibiting the supply of solar-generated electricity." Further, the costs of maintaining the regulated facilities to be ready to serve solar customers when solar power is limited or unavailable will likely be shifted to the remaining customers who do not contract with the unregulated solar suppliers.

Finally, the confusing language in the ballot summary leads the voter to believe that this initiative is about someone who owns a small house or small business with a solar panel on the roof and wants to sell electricity on a small-scale. However, according to the Florida Electric Cooperatives Association, a single local solar generating facility capable of generating 2 megawatts of electricity would span over 12 acres and could serve approximately 714 customers. The ballot summary does not provide notice to the voter that this proposed amendment provides for this scale of completely unregulated electricity generation.

Accordingly, because the ballot summary is confusing and does not convey the scope of the proposed amendment, I would not approve the initiative for placement on the ballot. I respectfully concur in part and dissent in part.

Two Cases:

Original Proceeding – Advisory Opinion – Attorney General

Pamela Jo Bondi, Attorney General, Alfred Lagran Saunders, Assistant Attorney General, Allen C. Winsor, Solicitor General, and Rachel Erin Nordby, Deputy Solicitor General, Tallahassee, Florida,

 for Petitioner

Robert Lowry Nabors, Gregory Thomas Stewart, and William Clark Garner of Nabors, Giblin & Nickerson, P.A., Tallahassee, Florida,

 for Floridians for Solar Choice, Inc., Sponsor

Stephen H. Grimes and David Bruce May, Jr. of Holland & Knight LLP, Tallahassee, Florida, and William Bartow Willingham and Michelle Lynn Hershel, Tallahassee, Florida, on behalf of Florida Electric Cooperatives Association, Inc.; Raoul G. Cantero, III and Thomas Neal McAliley of White & Case LLP, Miami, Florida, on behalf of Florida Chamber of Commerce; Linda Loomis Shelley of Buchanan, Ingersoll & Rooney, PC, Tallahassee, Florida, and Harry Morrison, Jr., Tallahassee, Florida, and Dan R. Stengle of Dan R. Stengle, Attorney, LLC, Tallahassee, Florida, and Jody Lamar Finklea and Amanda L. Swindle, Tallahassee, Florida, on behalf of Florida League of Cities, Inc. and Florida Municipal Electric Association, Inc.; Craig Edward Leen, City Attorney, Coral Gables, Florida, on behalf of the City of Coral Gables; Floyd Robert Self of Berger Singerman LLP, Tallahassee, Florida, and Javier Luis Vazquez of Berger Singerman LLP, Miami, Florida, on behalf of the City of Coral Gables and Florida State Hispanic Chamber of Commerce; Martin Stephen Turner of Broad and Cassel, Tallahassee, Florida, on behalf of Florida Chapter of the National Congress of Black Women, Inc.; William Christopher Browder, Vice President and General Counsel, and Terrie Louise Tressler, Deputy General Counsel, Orlando, Florida, on behalf of Orlando Utilities Commission; Susan Leslie Forbes Clark and Donna Elizabeth Blanton of the Radey Law Firm, Tallahassee, Florida, on behalf of National Black Chamber of Commerce; Major Best Harding and James Dawson Beasley of Ausley & McMullen, Tallahassee, Florida, on behalf of Tampa Electric Company; Jeffrey Alan Stone and Terrie Springer Didier of Beggs & Lane, R.L.L.P., Pensacola, Florida; John Todd Burnett, Deputy General Counsel, Saint Petersburg, Florida, on behalf of Duke Energy Florida; Kenneth Bradley Bell of Gunster, Yoakley & Stewart, P.A., Tallahassee, Florida, on behalf of Gulf Power

Company; Barry Scott Richard of Greenberg Traurig, P.A., Tallahassee, Florida, and Alvin Bruce Davis of Squire Patton Boggs, Miami, Florida, on behalf of Florida Power and Light Company; and Carlos Genaro Muñiz of McGuireWoods LLP, Tallahassee, Florida, on behalf of Florida Council for Safe Communities,

as Opponents