PARIENTE, J.,
dissenting.
Let the pro-solar energy consumers beware. Masquerading as a pro-solar energy initiative, this proposed constitutional amendment, supported by some of Florida’s major investor-owned electric utility companies, actually seeks to constitutionalize the status quo.[1] The ballot title is *835 affirmatively misleading by its focus on “Solar Energy Choice,” when no real choice exists for those who favor expansion of solar energy. The ballot language is further defective for purporting to grant rights to solar energy consumers that are illusory; and failing, as required, to clearly and unambiguously set forth the chief purpose of the proposed amendment — to maintain the status quo favoring the very electric utilities who are the proponents of this amendment.
As I more fully explain, the biggest problem with the proposed amendment “lies not with what the [ballot] summary says, but rather, with what it does not say.” Askew v. Firestone, 421 So.2d 151, 156 (Fla.1982). What the ballot summary does not say is that there is already a right to use solar equipment for individual use afforded by the Florida Constitution and existing Florida statutes ánd regulations. It does not explain that the amendment will elevate the existing rights of the government to regulate solar energy- use and establish that regulatory power as a constitutional right in Florida. This is a glaring omission, especially since rights enshrined in the Constitution are generally intended to limit, rather than grant, governmental power. Bush v. Holmes, 919 So.2d 392, 414 (Fla.2006) (citing Chiles v. Phelps, 714 So.2d 453, 458 (Fla.1998)). This ballot initiative is the proverbial “wolf in sheep’s clothing.”
The ballot initiative is titled “Rights of Electricity Consumers Regarding. Solar Energy Choice,” and is sponsored by “Consumers for Smart Solar” and supported by Duke Energy. Florida, Florida Power & Light Co., Gulf Power Co., and Tampa Electric- Company. At only eight words in length, the ballot title is affirmatively misleading because it focuses only on alleged rights related to a consumer’s choice to use solar energy; But it does not illuminate the real purpose, namely, to place a critical restriction on those rights through elevating state and local governments’police powers to regulate solar energy to the constitutional- level. In other words, what “rights” are purportedly given to consumers are severely limited by constitutionally protecting the local and state governments’ ability to fully regulate individual consumers’ solar energy use as part of their power to protect “public health, safety’ and welfare,” and by preventing “subsidies]” on non-solar users.
The second part of the amendment acts as a significant restriction on the expansion of solar energy rights and “choice[s]” by embedding in the Constitution the government’s unbridled discretion to regulate private solar energy use. Yet, any indication of this restriction is glaringly excluded from the ballot title, making it affirmatively misleading. ■
In addition, the ballot title was artfully drafted to emphasize “choice.” But what “choice” is being provided through this amendment? At one point, the “choice” intended by the ballot title appears to have been between this - amendment and the amendment in Advisory Opinion to the Att’y Gen. re Limits or Prevents Barriers to Local Solar Electricity Supply, 177 So.3d 235 (Ela.2015), sponsored, by “Floridians for. Solar Choice.”. The Limits or Prevents Barriers amendment,, which was intended to remove legal and regulatory *836 barriers to local solar-generated electricity-users who seek to sell a limited amount of solar-generated electricity to neighboring properties, id. at 248, was a driving- force for the present ballot initiative. But that amendment, which we approved, will not appear on the November 2016 ballot because the sponsor did not obtain the necessary signatures.[2] In other words, with only this solar energy amendment appearing on the ballot, there- really is no “choice” other than to preserve the status quo.
The language of the amendment does not appear to provide any “choice” or provide for the “rights” of electricity consumers who make the “choice” to install solar. For those electricity . consumers, . the amendment provides only one narrow right: to own or lease solar equipment for their own use. The only “choice” is whether to accept this narrow right or reject it.
At the same time, the ballot summary uses a term that the amendment does not define: “subsidize.” It appears that the amendment’s lack of a definition was intentional, especially since definitions are provided for every other substantive term, including the commonly understood term “consumer.” The sponsor of the amendment asserts that the term “subsidize” was intended to refer to the concern that non-solar consumers could be faced with a higher proportion of the fixed costs associated with maintaining the power grid, as a result of solar consumers’- reduced, but still existent, reliance on the power grid for backup power. Putting aside that this concern is speculative and not borne out in any present reality, the use of the term “subsidize” suggests that consumers who use solar energy necessarily impose a financial burden' on non-solar consumers and implies that this undesirable consequence of the right to own or lease solar equipment must be remedied through the proposed amendment.
Further, the average voter’s understanding of what “subsidize” means is highly -unlikely to conform to what the sponsor claims the undefined term means. In common parlance, the term “subsid[y]” is often understood as government programs such as subsidized housing and food stamps, as well as tax breaks, corporate subsidies, and agricultural subsidies — often controversial topics with sometimes negative connotations. The ballot summary’s use of the undefined term “subsidize” allows the potential for broad and shifting interpretations by the state and local governments empowered to regulate and prevent these “subsidies].” It is therefore misleading.
.- Beyond my specific concerns with the affirmatively misleading use of the terms “choice” and “subsidize” in- the ballot title and summary, the major flaw- in the ballot title and summary is that they fail to accurately inform the voter of the chief purpose and effect of the proposed amendment. In evaluating a proposed amendment:
The proper analysis to assess whether [the] ballot title and summary meet this requirement focuses on two questions: (1) whether the ballot title and summary, in clear and unambiguous language, fairly inform the voter of the chief purpose of the amendment; and (2) whether the language of the title and *837 summary, as written, misleads the public.
Advisory Op. to Att’y Gen. re Prohibiting State Spending for Experimentation That Involves the Destruction of a Live Human Embryo, 959 So.2d 210, 213-14 (Fla.2007) (citing Advisory Op. to Att’y Gen. re Fla. Marriage Prot. Amend., 926 So.2d 1229, 1236 (Fla.2006)).
Even though the language of the ballot summary is consistent with and nearly verbatim to the language used in the amendment, the problem is with what the ballot summary (and actual language of the amendment) fails to say. See Advisory Op. to Att’y Gen. re Casino Authorization, Taxation and Regulation, 656 So.2d 466, 469 (Fla.1995) (concluding language of the ballot summary suggesting the amendment was necessary to prohibit casinos in the state was “misleading not because of what it says, but what it fails to say”).
The ballot summary does not make clear that the right of homeowners to own solar equipment for their own use already exists. As a result, it creates a false impression that a vote in favor of the, amendment is necessary for the voter to be afforded the right at all. Many voters may indeed believe that there is no existing right to the use of solar energy equipment since, by the end of 2014, only 8,500, Florida consumers — a miniscule percentage of all Florida electricity consumers — were using solar power to generate electricity. Initial Br. of Fla. Solar Energy Indus. Ass’n, at 22.[3]
The ballot title and summary plainly fail to acknowledge that consumers already have a right to own solar equipment for individual use by virtue of article I, section 2, of the Florida Constitution, which provides the right to own property generally. The right to own solar equipment is also afforded to consumers through other statutes and regulations. See § 366.91, Fla. Stat. (2015); Fla. Admin. Code R. 25-6.065. If the amendment is passed, it would elevate this existing right to a constitutional level.
The problem with the amendment in this ballot initiative is not that a specific property right cannot be placed in the Florida Constitution. Nor .is it that the placement of a specific property right in the Constitution would not afford that right greater protection than would be afforded by the general right to property. Rather, the problem lies in the fact that the ballot title and summary fail to fairly inform voters that this is what the amendment does. This Court has held ballot.summaries defective for failing to inform the voter of an existing right or prohibition or that the amendment would elevate the right or prohibition to a constitutional level. When that failure has existed in amendments, we have struck them from the ballot. See, e.g., Casino Authorization, 656 So.2d 466; Evans v. Firestone, 457 So.2d 1351 (Fla.1984). In Casino Authorization, we.explained that ballot titles and summaries are defective in cases of affirmative omissions as well as misleading commissions:
In Askew v. Firestone, 421 So.2d 151 (Fla.1982), the legislature attempted to initiate a constitutional amendment that would remove the constitution’s absolute ban on lobbying by a former -government officeholder. The proposed amendment would prohibit lobbying unless the affected person met certain financial disclosure requirements. We found that the ballot summary was defective because it failed to inform the *838 voter that .the existing constitution -already banned, lobbying. We concluded that the problem with the summary “lies not with what the summary says, but, rather, with what it does not say.” Id. at 156. Turning to the instant case, the summary creates the false impression that casinos are now allowed in Florida. It fails 'to 'inform the voter that most types of casino gaming are currently prohibited by statute. See generally ch. 849, Fla. Stat. (1993). Without this admission, the summary suffers from the same defect as did the summary in Askew. :
656 So.2d at 469, (emphasis added).
In Evans, the proposed amendment would have had the effect of elevating the summary judgment rule already contained in Florida Rule of Civil Procedure 1.510 to a constitutional right. 457 So.2d at 1354. This Court determined the ballot summary was therefore defective, explaining: ;
The summary states that it “establishes” citizen’s rights in civil actions. This is clearly inaccurate as applied to provision b, relating to summary judgment. This provision has’ long been established in Florida. The effect of the amendment is to elevate this procedural rule to the status of a constitutional right, protected in the same manner and to the same degree as are other constitutional rights. We do not pass on the merits of the effect nor do we question the citizens’ right to do exactly this. We do find, however, that the voter must be told clearly and unambiguously that this is what the amendment does.
■Id. at 1355 (emphasis added). The ballot summary in this case similarly fails to clearly and unambiguously inform voters that this amendment is not creating a new right. The t>allot summary would lead voters to believe that a vote in favor of the amendment is necessary to advance the use of solar energy in Florida.
On the other side of the equation is the failure to inform voters of the true effect of elevating the state and local governments’ police powers in the area of solar regulation, to a constitutional level. The impact is that the constitutional right that the amendment purportedly creates in the first section is seriously diminished in the second section. The proposed amendment would have the practical effect of maintaining the status .quo with the balance of power in the hands of the utility companies.
As we have explained repeatedly over the last 100 years, the Florida Constitution limits, rather than grants, governmental powers:
The Constitution of this state is not a grant of power to the Legislature, but a limitation only upon legislative power, and unless legislatioii be clearly contrary to some express or necessarily implied prohibition found in the Constitution, the courts are without authority' to declare legislative Acts invalid. The Legislature may exercise any lawmaking power that’ is not forbidden by organic law.
Savage v. Board of Public Instruction, 101 Fla. 1362, 133 So. 341, 344 (1931) (citing State v. [Bryan], 50 Fla. 293, 39 So. 929 (Fla.1905); Jordan v. Duval Cty., 68 Fla. 48, 66 So. 298 (Fla.1914); and Stone v. State, 71 Fla. 514, 71 So. 634 (Fla.1916)). The legislature’s power is 'inherent, though it may be 'limited by the constitution. Thus, the legislature “looks to the Constitution for limitations oh its power and if not found to exist its discretion reasonably exercised is the sole brake on the enactment of legislation.” State v. Board of Pub. Instruction, 126 Fla. 142, 170 So. 602, 606 (Fla.1936).
*839 Chiles, 714 So.2d at 458 (emphasis added). Therefore, inherent in the Constitution is the recognition that governmental entities already have the power to enact reasonable regulations.
In contrast to the present proposed amendment, in other constitutional amend-, ments that this Court has approved, the power given to the government is limited to a proscribed framework and does not diminish the right the amendment purports to establish. For example, article X, section 20, which prohibits tobacco smoking in enclosed indoor workplaces, specifies exactly what it empowers the government to do. Art. X, § 20, Fla. Const. That amendment does not establish a constitutional right and then give the government unbridled discretion to limit expansion of that right. Rather, it establishes a constitutional right to smokefree workplaces and gives the government the power to advance that right even further. See art. X, § 20(d), Fla. Const. (“Nothing herein shall preclude the Legislature from enacting any law constituting or allowing a more restrictive regulation of ' tobacco smoking than is provided in this section.” (emphasis added)). Another example is the proposed amendment this Court approved in In re Advisory Op. to Att’y Gen. re Use of Marijuana for Debilitating Med. Conditions, 181 So.3d 471 (Fla.2015). There, the proposed amendment provided that the Department'of Health-“shall issue reasonable regulations necessary for the implementation and enforcement” of the proposed amendment “to ensure the availability and safe use of medical marijuana by'qualifying patients.” Id. at 475. The amendment addressed specific governmental duties within a framework meant to advance the right- to the use of medical marijuana created by the amendment, and did not grant the government the broad regulatory power to “protect consumer rights and public health, safety and welfare.” Despite the contentions of the sponsor and the majority,' the present amendment lacks . a. framework both' of rights and regulations of those rights. See majority op; at 831. To the contrary, the amendment gives constitutional protection to the government’s unbridled discretion to exercise its police powers as it sees fit to regulate and restrict the very solar energy right the amendment purports to provide.
The combined effect of constitutionaliz-ing a very narrow, but already existing right, and simultaneously constitutionaliz-ing the government’s powers to regulate when Floridians avail themselves of that right, is the status quo. Even the Financial Impact Estimating Conference, which prepared the Financial Impact Statement in this case, opined that the substantive effect of this amendment would be to “establish[ ] a constitutional right to own or lease solar equipment to generate electricity that is consistent with current law and administration.” (Emphasis added.) The Conference also determined that the amendment would not result .in an increase or decrease in any revenues or costs to the state and. local government. Clearly, this is an amendment geared to ensure nothing changes with respect to the use of solar energy in Florida — it is not a “pro-solar” amendment.
The merits and wisdom of adding an amendment -to the Florida Constitution that provides a very narrow right to own or lease solar equipment, subject to the state and local government’s constitution-alized right to regulate and restrict that right, are not before the Court. Those are issues for the voters to decide. But voters cannot make an informed decision unless they are provided a ballot title and summary that are clear and unambiguous, not affirmatively misleading or hiding the ball as to the chief purpose and effect of the amendment. As we have recently stated:
*840 The ballot title and summary must each “stand on its own merits and not be disguised as something else.” Askew v. Firestone, 421 So.2d 151, 156 (Fla.1982). The ballot title and summary may not “ ‘fly under false colors’ or ‘hide the ball’ •with regard to the true effect of an amendment.” Fla. Dep’t of State v. Slough, 992 So.2d 142, 147 (Fla.2008) (quoting Armstrong v. Harris, 773 So.2d 7, 16 (Fla.2000)). The purpose of this requirement is “to assure that the electorate is advised of the true meaning, and ramifications, of an amendment.” Askew, 421 So.2d at 156.
Limits or Prevents Barriers, 177 So.3d at 245.
If voters favor the status quo and want to elevate this status quo to a constitutional level, then voters should vote for this amendment. The ballot title and summary of this pro-utility amendment fail the test of advising voters of the “true meaning, and ramifications” of the amendment and should be struck. See Askew, 421 So.2d at 156. Accordingly, I dissent.
QUINCE and PERRY, JJ., concur.

. Due to the use and definitions of certain ■ terms within the proposed amendment, it may actually have the effect of diminishing some rights of solar energy consumers. For example, a group of environmental groups who filed a brief in opposition assert that this *835 amendment will eliminate “pay-by-the-watt” leases by narrowly defining "lease,” rendering many ordinary consumers unable to afford the “tens of thousands of dollars to purchase solar panels.” They explain that "pay-by-the-watt leases” obligate a homeowner to pay only for the electricity actually provided by the solar panels. See Answer Brief of Progress Florida, Inc., Environment Florida, Inc., and the Environmental Confederation of Southwest Florida, Inc., at 2-6.

. While the identity of the sponsors and supporters of a given amendment is not a factor ■in determining if the ballot title and summary are- misleading, the supporters of this amendment, such as Duke Energy Florida, Gulf Power Company, and Tampa Electric Company, that were among the opponents of the ‘ Limits or Prevents Barriers amendment, acknowledge that the Limits or Prevents Barriers amendment was an “impetus of sorts” for the present ballot initiative. Corrected Ans. Br. of Duke Energy Fla., et al. at 1.

. As the opponents explain, this is an extremely small percentage of consumers in the "Sunshine State,” as compared, for example, to the state of New Jersey, which has over 40,000 solar energy consumers. See Initial Br. of Fla. Solar Energy Indus. Ass'n, at 22.