PER CURIAM.
The Attorney General has requested this Court to review a proposed amendment to the Florida Constitution. We have jurisdiction. See art. IV, § 10; art. V, § 3(b)(10), Fla. Const. For the reasons expressed below, we hold the proposed amendment violates article XI, section 3, *631 Florida Constitution, and section 101.161, Florida Statutes (2003).[1]
I. PROCEEDINGS TO DATE
Floridians Against Inequities in Rates (“FAIR”), a political committee registered pursuant to section 106.03, Florida Statutes (2003), has invoked the petition process of article XI, section 3, Florida Constitution, to propose a constitutional amendment through citizen initiative. The amendment would direct the Legislature to perform an open review of exemptions from and exclusions to the state’s sales tax. The full text of the proposed amendment states:
BE IT ENACTED BY THE PEOPLE OF FLORIDA THAT:
ARTICLE III of the Florida Constitution is hereby amended to add the following as Section 20:
Legislative review and enactment of exemptions and exclusions from the sales tax. — ■
(a) FAIRNESS INITIATIVE. Except for the current exemptions provided for: food; prescription drugs; health services; and residential rent, electricity and heating fuel, which secure tax fairness, the Legislature shall, prior to July 1, 2007, and prior to the first day of July for each tenth year thereafter, review all exemptions and services or transactions excluded from the sales tax existing on or created subsequent to the effective date of this amendment. The Legislature shall reenact only those exemptions or adopt and continue only those exclusions that advance or serve the public purpose of: encouraging economic development and competitiveness; supporting educational, governmental, literary, scientific, religious, or charitable initiatives or institutions; or securing tax fairness. All exemptions or exclusions that are not reenacted or adopted and continued by the adoption of a law in conformity with the enactment requirements provided in this section shall be eliminated effective January 1 subsequent to the July 1 deadline established in this section for the review of all exemptions and exclusions. Each law creating or reenacting a sales tax exemption or creating or continuing an exclusion shall require approval by three-fifths vote of the membership of each house of the Legislature, shall contain the single subject-matter of a single exemption or a single exclusion and shall contain a factual determination that each exemption or exclusion advances or serves a public purpose as enumerated in this section.
(b) CONSTRUCTION. For purpose of this section:
(1) The term sales tax shall mean the tax on sales, use and other transactions levied by the state or authorized to be levied by a local government in chapter 212, Florida Statutes, as of January 1, 2003, except that the term sales tax shall not include the convention development tax, the local option food and beverage tax or the rental car surcharge provided in sections 212.0305, 212.0306, or 212.0606, Florida Statutes, or the taxation of: the sales of tangible personal property purchased for resale or imported, produced, or manufactured in this state for export; sales of real property; sales of intangible personal property; payment of employee salaries and benefits; or transactions subject to the com *632 munications services tax imposed in chapter 202, Florida Statutes.
(2) The term “exclusion” and the phrase “a service or transaction excluded from the sales tax” shall mean a sale or use of tangible personal property or the rendering of services for consideration that is not subject to the sales tax and not specifically exempted on the effective date of this amendment.
(3) To satisfy the enactment limitation of this section that each law shall contain only the single subject-matter of a single exclusion, each law adopting or continuing an exclusion from the sales tax shall include or reference the sale or use or the rendering of a service by a business, industry or profession with at least the same first four digits in its NAICS code number as described by the North American Classification System code published by the United States Census Bureau, or its successor in function.
The ballot title for the proposed amendment is “Fairness Initiative Requiring Legislative Determination that Sales Tax Exemptions and Exclusions Serve A Public Purpose.” The summary for the proposed amendment states:
The Legislature shall periodically review sales tax exemptions or excluded services and transactions except: food; prescription drugs; health services; and residential rent, electricity, and heating fuel; and shall continue or create only exemptions or exclusions serving a defined public purpose. Each law shall contain the single subject of a single exemption or exclusion and be approved by three-fifths vote of each legislative house. Exemptions and exclusions not reenacted or adopted by the Legislature are eliminated.
The Florida Secretary of State submitted the amendment to the Florida Attorney General, pursuant to section 15.21, Florida Statutes (2003).
In accordance with the provisions of article IV, section 10, Florida Constitution, and section 16.061, Florida Statutes (2003), the Attorney General has petitioned this Court for an advisory opinion as to whether the text of the proposed amendment complies with article XI, section 3, Florida Constitution, and whether the proposed ballot title and summary comply with section 101.161, Florida Statutes (2003). FAIR has filed a brief in favor of the proposed amendment, and a number of interested parties have filed a joint brief opposing the placement of the amendment on the ballot.[2]
*633 II. THIS COURT’S INQUIRY
When the Court is mandated to render an advisory opinion concerning a proposed constitutional amendment arising through the citizen initiative process, the Court must limit its inquiry to two issues: (1) whether the amendment violates the single-subject requirement of article XI, section 3, Florida Constitution, and (2) whether the ballot title and summary violate the requirements of section 101.161(1), Florida Statutes (2003). See, e.g., Advisory Op. to Att’y Gen. re Amendment to Bar Gov’t From Treating People Differently Based on Race in Pub. Educ., 778 So.2d 888, 890-91 (Fla.2000).
In addressing these two issues, our inquiry is governed by several general principles. First, we do not consider or address the merits or wisdom of the proposed amendment. See, e.g., Amendment to Bar Gov’t From Treating People Differently Based on Race in Pub. Educ., 778 So.2d at 891. Second, “[t]he Court must act with extreme care, caution, and restraint before it removes a constitutional amendment from the vote of the people.” Askew v. Firestone, 421 So.2d 151, 156 (Fla.1982). Specifically, where citizen initiatives are concerned, “[the] Court has no authority to inject itself in the process, unless the laws governing the process have been ‘clearly and conclusively’ violated.” Advisory Op. to Att’y Gen. re Right to Treatment and Rehabilitation for Non-Violent Drug Offenses, 818 So.2d 491, 498-99 (Fla.2002); see also Amendment to Bar Gov’t From Treating From Treating People Differently Based on Race in Pub. Educ., 778 So.2d at 891 (“In order for the Court to invalidate a proposed amendment, the record must show that the proposal is clearly and conclusively defective.... ”). Hence, our review is narrow and limited to the two questions set out above.
III. THE SINGLE-SUBJECT RULE
Article XI, section 3, Florida Constitution, sets forth the requirements for a proposed constitutional amendment arising via the citizen initiative process. This section contains the single-subject rule:
SECTION 3. Initiative. — The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment, except for those limiting the power of government to raise revenue, shall embrace but one subject and matter directly connected therewith.
Art. XI, § 3, Fla. Const, (emphasis added). The single-subject requirement is a “rule of restraint” that was “placed in the constitution by the people to allow the citizens, by initiative petition, to propose and vote on singular changes in the functions of our governmental structure.” Advisory Op. to Att’y Gen. re Prohibiting Public Funding of Political Candidates’ Campaigns, 693 So.2d 972, 975 (Fla.1997) (quoting Fine v. Firestone, 448 So.2d 984, 988 (Fla.1984)). Specifically, the single-subject rule prevents an amendment from engaging in either of two practices: (a) logrolling, or (b) substantially altering or performing the functions of multiple branches of state government.
The single-subject rule prevents logrolling, “a practice wherein several separate issues are rolled into a single initiative in order to aggregate votes or secure approval of an otherwise unpopular issue.” See In re Advisory Op. to Att’y Gen.—Save Our Everglades, 636 So.2d 1336, 1339 (Fla. 1994); see also Advisory Op. to Att’y Gen. re Limited Casinos, 644 So.2d 71, 73 (Fla. *634 1994) (“A primary purpose for the single-subject restriction is to prevent ‘logrolling,’ a practice whereby an amendment is proposed which contains unrelated provisions, some of which electors might wish to support, in order to get an otherwise disfavored provision passed.”); Fine, 448 So.2d at 993 (“The purpose of the single-subject requirement is to ... avoid voters having to accept part of a proposal which they oppose in order to obtain a change which they support.”). In addressing this issue, the Court utilizes a “oneness of purpose” standard. See Fine, 448 So.2d at 990 (“[T]he one-subject limitation deal[s] with a logical and natural oneness of purpose .... ”). A proposed amendment meets this test when it “may be logically viewed as having a natural relation and connection as component parts or aspects of a single dominant plan or scheme. Unity of object and plan is the universal test....” Id. (quoting City of Coral Gables v. Gray, 154 Fla. 881, 19 So.2d 318, 320 (1944)).
Although FAIR argues that the proposed amendment deals with the single-subject of sales tax, in reality, the initiative before the Court for review contains three disparate subjects: (1) a scheme for the Legislature to review existing exemptions to the sales tax under chapter 212; (2) the creation of a sales tax on services that currently does not exist; and (3) limitations on the Legislature’s ability to create or continue exemptions and exclusions from the sales tax.
The first of these three subjects creates a scheme for review of legislative exemptions to the sales tax in chapter 212, Florida Statutes. Chapter 212 generally imposes the sales and use tax on goods, but also includes enumerated exemptions for goods that are not to be taxed.[3] The proposed amendment would create a scheme by which the Legislature would review these exemptions listed in chapter 212 and determine which exemptions should be continued because they serve the public purpose of (1) encouraging economic development and competitiveness; (2) supporting educational, governmental, literary, scientific, religious, or charitable initiatives or institutions; or (3) securing tax fairness. If the Legislature does not reenact the exemption, the exemption expires.
Separate from the review of exemptions in chapter 212, the proposed amendment also requires the Legislature to examine “exclusions” from the sales tax. Section (b)(1) of the proposed amendment specifically defines exclusions on services and transactions from the sales tax as meaning “a sale or use of tangible personal property or the rendering of services for consideration that is not subject to the sales tax and not specifically exempted on the effective date of this amendment.” (Emphasis added.) Therefore, unlike the specific exemptions in chapter 212, exclusions are not enumerated or expressly listed in the statutes. The Legislature would ostensibly have to anticipate and identify what services and transactions are currently excluded from the sales tax. If the Legislature failed to anticipate or identify a particular transaction or service and specifically exclude it from being *635 taxed, the result would be appear to be a tax on such service created by the Legislature’s inaction. Hence, we must agree with the assertion that, by its operation, the proposed amendment would create a sales tax on services that currently does not exist.
Finally, the proposed amendment also limits the Legislature’s authority to pass exemptions or exclusions to the sales tax by requiring the Legislature to enunciate a public purpose within a set of defined criteria. Moreover, the Legislature is required to pass each law creating or reenacting a sales tax exemption or creating or continuing an exclusion by a three-fifths vote of the membership of each house of the Legislature.
While all of these three goals arguably relate to sales taxes, and any one of these three goals might be the permissible subject of a constitutional amendment under the initiative process, we conclude that together they constitute impermissible logrolling and violate the single-subject requirement of article XI, section 3, of the Florida Constitution because of the substantial, yet disparate, impact they may have. A voter may support requiring the Legislature to periodically review tax exemptions on the sale of certain goods, but oppose the actual creation of a broad sales tax on undefined services that are currently excluded from the sales tax. This initiative requires the voter to “choose all or nothing” among the three apparent effects of the amendment. Save Our Everglades, 636 So.2d at 1341. This case is similar to others where we have concluded that a proposed amendment engages in impermissible logrolling. See, e.g., Advisory Opinion to the Attorney General re Tax Limitation, 644 So.2d 486, 491 (Fla.1994) (concluding that proposed amendment violated the single-subject requirement because it combined the subjects of taxes and fees); Save Our Everglades, 636 So.2d at 1341 (holding that initiative’s dual objectives, i.e., to restore the Everglades and to compel the sugar industry to fund the restoration, constituted impermissible logrolling); Advisory Opinion to the Attorney General re Right of Citizens to Choose Health Care Providers, 705 So.2d 563 (Fla.1998) (holding that proposed amendment was “flawed in many respects” and violated single-subject requirement by banning limitations on health care provider choices and prohibiting private parties from entering into contracts that would limit health care provider choice).
IV. BALLOT TITLE AND SUMMARY
Section 101.161, Florida Statutes (2003), sets forth the requirements for the ballot title and summary of a proposed constitutional amendment and provides in relevant part:
[T]he substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure.... The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
§ 101.161(1), Fla. Stat. (2003). The basic purpose of this provision is “to provide fair notice of the content of the proposed amendment so that the voter will not be misled as to its purpose, and can cast an intelligent and informed ballot.” See Advisory Op. to Att’y Gen. re Fee On Everglades Sugar Prod., 681 So.2d 1124, 1127 (Fla.1996).
In conducting its inquiry into the validity of a proposed amendment under section 101.161(1), the Court asks two questions. First, the Court asks whether “the ballot title and summary ... fairly inform the voter of the chief purpose of the amend *636 ment.” Right to Treatment and Rehabilitation for Non-Violent Drug Offenses, 818 So.2d at 497. Second, the Court asks “whether the language of the title and summary, as written, misleads the public.” Advisory Op. to Att’y Gen. re Right of Citizens to Choose Health Care Providers, 705 So.2d 563, 566 (Fla.1998).
Because we have concluded that the proposed amendment violates the single-subject rule, we need not discuss all the opponents’ challenges to the ballot summary and title. Nevertheless, as noted above, the proposed amendment operates in a way that could essentially create a tax on services if the Legislature fails to enact specific exclusions for all possible services. We conclude that a voter must be directly informed of such an important consequence, and that this summary fails to do so. Therefore, we conclude that the ballot summary is deficient because it does not inform the voter that the amendment can operate in a way that would create such a tax by the passage of the amendment.
y. CONCLUSION
We recognize the need of this Court to “act with extreme care, caution, and restraint before it removes a constitutional amendment from the vote of the people.” Askew v. Firestone, 421 So.2d at 156. However, our review would be meaningless if we failed to act when presented with a proposed amendment that is clearly and conclusively defective. Accordingly, we hold that the proposed amendment fails to comply with the legal requirements of arti-ele XI, section 3 of the Florida Constitution and section 101.161, Florida Statutes (2003).[4]
It is so ordered.
No petition for rehearing will be entertained by the Court.
PARIENTE, C.J., and WELLS, QUINCE, CANTERO, and BELL. JJ., concur.
ANSTEAD and LEWIS, JJ., concur in result only.

. This Court’s review responsibilities are mandatory but narrow and are completely unrelated to the merits of the proposed amendment. Rather, we are mandated to determine whether the amendment addresses a single subject and whether the ballot title and summary for the amendment is adequate to properly inform the voter.

. The parties appearing in opposition include: (1) Florida Association of Realtors, Inc., a not-for-profit Florida corporation made up of professionals in the Florida real estate industry; (2) Florida Institute of Certified Public Accountants and Florida Institute of Accountants, Inc., a not-for-profit Florida corporation that has members who are certified public accountants licensed to perform professional accounting services in Florida; (3) National Federation of Independent Businesses, Inc., a California not-for-profit corporation that represents members located and doing business in Florida; (4) Florida Phosphate Council, Inc., a not-for-profit Florida corporation that is a trade association that represents five member companies in statewide governmental relations and public affairs; (5) Florida Cattlemen's Association, Inc., a not-for-profit Florida corporation that represents members who are in the cattle and ranching business; (6) Florida Farm Bureau Federation, Inc., a not-for-profit Florida corporation representing commercial farmers and their families; (7) Florida Manufacturing and Chemical Council, Inc., a not-for-profit Florida corporation representing approximately fifty businesses in the manufacturing and associated industries; (8) Florida Fruit and Vegetable Association, Inc., a not-for-profit Florida corporation that is a trade association that aims to enhance the fruit and vegetable business; and (9) Sunshine State Milk Producers, Inc., a Florida not-for-profit corporation that rep *633 resents dairy farms throughout the southeastern United States.

. Chapter 212 does address sales tax on certain specifically delineated services. See, e.g., §§ 212.05(l)(i), Fla. Stat. (2003) (providing for tax on detective, burglar protection, and other protection services and pest control services); 212.0606, Fla. Stat. (2003) (providing a daily surcharge on rental car services); 212.08(7)(v), Fla. Stat. (2003) (exempting "professional services” from sales tax). However, other than these very limited exceptions, services generally are not within the scope of the sales and use tax provided for in chapter 212.

. Pursuant to article XI, section 5(b) of the Florida Constitution, the Legislature recently enacted legislation requiring this Court's review of financial statements as to the estimated increase or decrease in any revenues or costs to state or local governments resulting from proposed initiatives. See ch.2004-33, Laws of Fla. Because we are holding that the proposed amendment should be stricken for failure to comply with the single-subject requirement of article XI, section 3 of the Florida Constitution and with the ballot title and summary requirements of section 101.161, Florida Statutes (2003), we need not conduct the separate review process contemplated by the new legislation for this proposed amendment.