# Supreme Court of Florida

_____

No. SC15-2150
_____

**ADVISORY OPINION TO THE ATTORNEY GENERAL RE: RIGHTS OF ELECTRICITY CONSUMERS REGARDING SOLAR ENERGY CHOICE.**

_____

No. SC16-12
_____

**ADVISORY OPINION TO THE ATTORNEY GENERAL RE: RIGHTS OF ELECTRICITY CONSUMERS REGARDING SOLAR ENERGY CHOICE (FIS).**

[March 31, 2016]

PER CURIAM.

The Attorney General of Florida has petitioned this Court for an advisory opinion as to the validity of a proposed citizen initiative amendment to the Florida Constitution titled "Rights of Electricity Consumers Regarding Solar Energy Choice" and the corresponding Financial Impact Statement submitted by the Financial Impact Estimating Conference. Consumers for Smart Solar, Inc., (the "sponsor"), submitted the proposed amendment under article XI, section 3 of the

Florida Constitution. We have jurisdiction. See art. IV, § 10, art. V, § 3(b)(10), Fla. Const.

This Court's review of the proposed amendment is limited to three issues. First, we must determine whether the proposed amendment satisfies the single-subject requirement of article XI, section 3 of the Florida Constitution. Second, we must determine whether the ballot title and summary satisfy the requirements of section 101.161(1), Florida Statutes (2015). And third, this Court must determine whether the Financial Impact Statement complies with the requirements of section 100.371(5), Florida Statutes (2015). See § 101.161(1), Fla. Stat. (2015).

For the reasons that follow, we conclude that the proposed amendment embraces a single subject and matter directly connected therewith, and therefore complies with article XI, section 3 of the Florida Constitution. We also conclude that the ballot title and summary comply with section 101.161(1) because they are not clearly and conclusively defective. Finally, we conclude that the accompanying Financial Impact Statement complies with the requirements of section 100.371(5), Florida Statutes (2015). Accordingly, we approve the proposed amendment and Financial Impact Statement for placement on the ballot.

## I. BACKGROUND

On November 24, 2015, the Attorney General petitioned this Court for an opinion as to the validity of an initiative petition sponsored by Consumers for

Smart Solar, Inc., and circulated under article XI, section 3 of the Florida Constitution. On December 21, 2015, this Court issued an order permitting interested parties to file briefs on the proposed amendment. The sponsor submitted a brief supporting the validity of the initiative petition, as did the Florida Electric Cooperatives Association, Inc., and the 60 Plus Association. Duke Energy Florida, Florida Power and Light Co., Gulf Power Co., and Tampa Electric Co. jointly filed a brief in support of the initiative. Floridians for Solar Choice, Inc., submitted a brief in opposition, as did the Florida Solar Energy Industries Association. Progress Florida, Inc., Environment Florida, Inc., and the Environmental Confederation of Southwest Florida, Inc., jointly filed a brief in opposition. Florida Energy Freedom, Inc., filed an amicus brief in opposition to which the sponsor responded.

The amendment proposed by Consumers for Smart Solar, Inc., would add the following new section 29 to article X of the Florida Constitution:

> Section 29—Rights of electricity consumers regarding solar energy choice.—
> (a) ESTABLISHMENT OF CONSTITUTIONAL RIGHT. Electricity consumers have the right to own or lease solar equipment installed on their property to generate electricity for their own use.
> (b) RETENTION OF STATE AND LOCAL GOVERNMENTAL ABILITIES. State and local governments shall retain their abilities to protect consumer rights and public health, safety and welfare, and to ensure that consumers who do not choose to install solar are not required to subsidize the costs of backup power and electric grid access to those who do.

(c)  DEFINITIONS.  For purposes of this section, the following words and terms shall have the following meanings:

(1)  "consumer" means any end user of electricity regardless of the source of that electricity.

(2)  "solar equipment," "solar electrical generating equipment" and "solar" are used interchangeably and mean photovoltaic panels and any other device or system that converts sunlight into electricity.

(3)  "backup power" means electricity from an electric utility, made available to solar electricity consumers for their use when their solar electricity generation is insufficient or unavailable, such as at night, during periods of low solar electricity generation or when their solar equipment otherwise is not functioning.

(4)  "lease," when used in the context of a consumer paying the owner of solar electrical generating equipment for the right to use such equipment, means an agreement under which the consumer pays the equipment owner/lessor a stream of periodic payments for the use of such equipment, which payments do not vary in amount based on the amount of electricity produced by the equipment and used by the consumer/lessee.

(5)  "electric grid" means the interconnected electrical network, consisting of power plants and other generating facilities, transformers, transmission lines, distribution lines and related facilities, that makes electricity available to consumers throughout Florida.

(6)  "electric utility" means any municipal electric utility, investor-owned electric utility, or rural electric cooperative which owns, maintains, or operates an electric generation, transmission, or distribution system within the state.

(d)  EFFECTIVE DATE.  This section shall be effective immediately upon voter approval of this amendment.

The ballot title for the proposed amendment is "Rights of Electricity Consumers Regarding Solar Energy Choice."  The ballot summary for the proposed amendment states:

This amendment establishes a right under Florida's constitution for consumers to own or lease solar equipment installed on their property to generate electricity for their own use.  State and local governments

shall retain their abilities to protect consumer rights and public health, safety and welfare, and to ensure that consumers who do not choose to install solar are not required to subsidize the costs of backup power and electric grid access to those who do.

On November 30, 2015, the Financial Impact Estimating Conference forwarded to the Attorney General the following Financial Impact Statement regarding the initiative petition: "The amendment is not expected to result in an increase or decrease in any revenues or costs to state and local government."

## II.  STANDARD OF REVIEW

"This Court has traditionally applied a deferential standard of review to the validity of a citizen initiative petition and 'has been reluctant to interfere' with 'the right of self-determination for all Florida's citizens' to formulate 'their own organic law.' "  In re Advisory Op. to Att'y Gen. re Use of Marijuana for Certain Med. Conditions (Medical Marijuana I), 132 So. 3d 786, 794 (Fla. 2014) (quoting Advisory Op. to Att'y Gen. re Right to Treatment & Rehab. for Non-Violent Drug Offenses, 818 So. 2d 491, 494 (Fla. 2002)).  This Court does "not consider or address the merits or wisdom of the proposed amendment" and must "act with extreme care, caution, and restraint before it removes a constitutional amendment from the vote of the people."  In re Advisory Op. to Att'y Gen. re Limits or Prevents Barriers to Local Solar Elec. Supply, 177 So. 3d 235, 242 (Fla. 2015) (quoting In re Advisory Op. to Att'y Gen. re Fairness Initiative Requiring Legis. Determination that Sales Tax Exemptions & Exclusions Serve a Pub. Purpose

- 5 -

(Fairness Initiative), 880 So. 2d 630, 633 (Fla. 2004)).  Accordingly, it is this Court's duty to uphold a proposal unless it can be shown to be clearly and conclusively defective.  Limits or Prevents Barriers, 177 So. 3d at 246; Medical Marijuana I, 132 So. 3d at 795.

## III.  SINGLE-SUBJECT REQUIREMENT

Article XI, section 3 of the Florida Constitution establishes the general requirement that a proposed citizen initiative amendment "shall embrace but one subject and matter directly connected therewith."  Art. XI, § 3, Fla. Const.  "In evaluating whether a proposed amendment violates the single-subject requirement, the Court must determine whether it has a logical and natural oneness of purpose." In re Advisory Op. to Att'y Gen. re Use of Marijuana for Debilitating Medical Conditions (Medical Marijuana II), 181 So. 3d 471, 477 (Fla. 2015) (internal citations omitted).  The single-subject requirement applies to the citizen initiative method of amending the Florida Constitution because the citizen initiative process does not afford the same opportunity for public hearing and debate that accompanies other constitutional proposal and drafting processes.  See Advisory Op. to the Att'y Gen. re 1.35% Prop. Tax Cap, Unless Voter Approved, 2 So. 3d 968, 972 (Fla. 2009).

The single-subject rule prevents an amendment from (1) engaging in "logrolling" or (2) "substantially altering or performing the functions of multiple

- 6 -

aspects of government." Advisory Op. to Att'y Gen. re Fla. Transp. Initiative for Statewide High Speed Monorail, Fixed Guideway or Magnetic Levitation Sys., 769 So. 2d 367, 369 (Fla. 2000). The term logrolling refers to a practice whereby an amendment is proposed which contains unrelated provisions, some of which electors might wish to support, in order to get an otherwise disfavored provision passed. Advisory Op. to Att'y Gen. re: Protect People, Especially Youth, from Addiction, Disease, & Other Health Hazards of Using Tobacco, 926 So. 2d 1186, 1191 (Fla. 2006).

We conclude that the initiative has a logical and natural oneness of purpose. The logical and natural oneness of purpose of the proposed amendment is to establish a constitutional right for electricity consumers "to own or lease solar equipment installed on their property to generate electricity for their own use" while simultaneously ensuring that "State and local governments shall retain their abilities to protect consumer rights and public health, safety and welfare, and to ensure that consumers who do not choose to install solar are not required to subsidize the costs of backup power and electric grid access to those who do."

The opponents of the initiative contend that the proposed amendment violates the single-subject requirement by combining three disjointed subjects into one initiative. We disagree. Provision (b) of the proposed amendment is directly related to provision (a). The subparts of this amendment have a natural relation

and connection as component parts or aspects of a single dominant plan or scheme. See Advisory Op. to Att'y Gen. re Standards for Establishing Leg. Dist. Boundaries, 2 So. 3d 175, 181-82 (Fla. 2009).

Combining a constitutional right with the government's authority to regulate that right represents two sides of the same coin, and we have approved ballot initiatives that similarly have created constitutional rights and allowed the government to regulate the right. See, e.g., Medical Marijuana II, 181 So. 3d 471. While the amendment establishes a constitutional right, that right would not be unfettered. Instead, the right would be limited to the extent that State and local governments find necessary to protect consumer rights and public health, safety, and welfare, and to prevent the exercise of the constitutional right from infringing upon the rights of others, specifically, in the form of a subsidy. The components of the amendment are therefore naturally related and connected to the amendment's oneness of purpose.

The amendment does not engage in impermissible logrolling. It does not involve a popular, desirable provision combined with one that is undesirable, such as asking that solar consumers pay more than their fair share relative to non-solar consumers. Again, the provisions represent two sides of the same coin: individual rights and regulation related to those rights. See State ex rel. Hosack v. Yocum, 186 So. 448, 451 (Fla. 1939) ("The fundamental right of a person to pursue a

calling cannot be taken away by special legislative enactment, but the same is subject to proper and reasonable police regulations. This reasonable regulation may be imposed within proper limits without invading the fundamental right to engage in a lawful business or occupation.").

The opponents of the initiative assert that this case involves single-subject violations similar to those in Evans v. Firestone, 457 So. 2d 1351 (Fla. 1984), and Fairness Initiative, cases in which this Court determined the proposed amendment violated the single-subject requirement of article XI, section 3 of the Florida Constitution. We disagree.

In Evans, the proposed amendment sought to accomplish three things: (1) limit potential payment of damages by a party to a civil action to his or her percentage of liability; (2) require a court to grant summary judgment on the motion of any party when the court finds that no genuine dispute exists concerning material facts of the case; and (3) limit the award of non-economic damages to a maximum of $100,000 against any party. 457 So. 2d at 1353. However, this Court determined that the proposed amendment failed the functional test for the single-subject requirement because it substantially performed the function of multiple branches of government. See id. at 1354. This Court also determined that proposed amendment failed the single-subject requirement because the summary judgment provision was not "directly connected" to the other two provisions. Id.

Unlike the proposed amendment in <u>Evans</u>, the proposed amendment in this case does not substantially perform the function of multiple branches of government. Furthermore, unlike the proposed amendment in <u>Evans</u>, all of the provisions of the proposed amendment in this case are directly connected to each other.

In <u>Fairness Initiative</u>, the proposed amendment "contain[ed] three disparate subjects: (1) a scheme for the Legislature to review existing exemptions to the sales tax under chapter 212; (2) the creation of a sales tax on services that currently does not exist; and (3) limitations on the Legislature's ability to create or continue exemptions and exclusions from the sales tax." 880 So. 2d at 634. This Court reasoned that

> [w]hile all of these three goals arguably relate to sales taxes, and any one of these three goals might be the permissible subject of a constitutional amendment under the initiative process, we conclude that together they constitute impermissible logrolling and violate the single-subject requirement of article XI, section 3, of the Florida Constitution because of the substantial, yet disparate, impact they may have.

<u>Id.</u> at 635. Unlike the proposed amendment in <u>Fairness Initiative</u>, the proposed amendment in this case does not contain disparate subjects. Rather, it involves one express right and addresses the related ability of State and local governments to regulate that right.

Additionally, we conclude that the proposed amendment does not substantially alter or perform the functions of multiple branches of government.

The opponents of the initiative contend that the proposed amendment violates the single-subject requirement by removing the ability of the State to delegate its regulatory powers to its political subdivisions and prohibiting the State from revoking any powers it delegated to local governments before the adoption of the proposed amendment. However, nothing within the proposed amendment implicitly or explicitly abrogates the power of preemption "retain[ed]" by the State under the amendment. As this Court has long recognized, "[w]hile the authority given to cities and counties [and administrative bodies] in Florida is broad, both the constitution and statutes recognize that cities and counties [and administrative bodies] have no authority to act in areas that the legislature has preempted." Florida Power Corp. v. Seminole Cty., 579 So. 2d 105, 107 (Fla. 1991); see, e.g., art. VIII, § 1(f), 1(g), 2(b), Fla. Const.; §§ 125.01, 166.021, Fla. Stat. (2015); City of Cape Coral v. GAC Utilities, Inc., of Florida, 281 So. 2d 493, 495-96 (Fla. 1973) ("All administrative bodies created by the Legislature are not constitutional bodies, but, rather, simply mere creatures of statute. . . . As such, the [Public Service] Commission's powers, duties and authority are those and only those that are conferred expressly or impliedly by statute of the State."). Moreover, "the opponents do not indicate how this amendment will interfere with or take over the state's energy policy." Limits or Prevents Barriers, 177 So. 3d at 244.

The proposed amendment would have a possible effect on the operation of the executive and legislative branches, but it does so only in the general sense that any constitutional provision does. The proposed amendment does not require any of the branches of government to perform any specific functions. Instead, it maintains the regulatory authority of State and local governments, but limited such that it does not violate the constitutional right that the proposed amendment seeks to establish. Requiring a branch of the government to comply with a provision of the Florida Constitution does not necessarily constitute the usurpation of the government branch's function within the meaning of the single-subject requirement. See Protect People, Especially Youth, 926 So. 2d at 1192.

As this Court has recognized, "it [is] difficult to conceive of a constitutional amendment that would not affect other aspects of government to some extent." Advisory Op. to Att'y Gen. re Ltd. Casinos, 644 So. 2d 71, 74 (Fla. 1994). Accordingly, an initiative may affect the government without substantially altering or performing the functions of multiple aspects of government. For example, this Court approved an initiative in Medical Marijuana I that would require the Department of Health to "register and regulate centers that produce and distribute marijuana for medical purposes and . . . issue identification cards to patients and caregivers." 132 So. 3d at 794, 796-97. Although the initiative in that case provided new, specific responsibilities for the Department of Health, this Court

determined that the regulatory oversight did not constitute usurpation of a branch of government's function within the meaning of the single-subject rule and "the Department of Health would not be empowered under this amendment to make the types of primary policy decisions that are prohibited under the doctrine of nondelegation of legislative power." Id. at 797; see also Medical Marijuana II, 181 So. 3d at 477-78 (coming to the same conclusion with respect to a similar ballot initiative).

The initiative at issue here simply provides that State and local governments "shall retain their abilities to protect consumer rights and public health, safety and welfare, and to ensure that consumers who do not choose to install solar are not required to subsidize the costs of backup power and electric grid access to those who do." This initiative does not specify the branches of government affected and does not detail specific functions in the manner that the initiatives in Medical Marijuana I and Medical Marijuana II had. Although the proposed amendment would affect the government in a literal sense by requiring State and local governments to comply with a provision of the Florida Constitution while retaining their existing abilities, it does not cause the "precipitous" or "cataclysmic" changes to the government structure indicative of substantially altering or performing the functions of multiple branches of government. See Advisory Op. to Att'y Gen. re

- 13 -

Prohibiting State Spending for Experimentation That Involves the Destruction of a Live Human Embryo, 959 So. 2d 210, 213 (Fla. 2007).

Finally, because the proposed amendment is written so generally, one might argue that it requires unspecified legislation to be enacted in order to fully effectuate its purpose. However, this Court has rejected similar arguments before because the amendment did not mandate any legislation, and it would be premature to speculate as to how the amendment might interact with other portions of the Florida Constitution even though it is possible that, if passed, the amendment could have broad ramifications. See, e.g., Leg. Dist. Boundaries, 2 So. 3d at 181; Advisory Op. to Att'y Gen. English—the Official Language of Florida, 520 So. 2d 11, 12-13 (Fla. 1988).

For the reasons set forth above, we hold that the proposed citizen initiative amendment does not violate the single-subject requirement of article XI, section 3 of the Florida Constitution.

## IV. BALLOT TITLE AND SUMMARY

Under section 101.161(1), Florida Statutes (2015), "[t]he ballot summary of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure" and "[t]he ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of." Moreover, "a ballot summary

of such amendment or other public measure shall be printed in clear and unambiguous language." § 101.161(1), Fla. Stat. (2015). The basic purpose of section 101.161 is "to provide fair notice of the content of the proposed amendment so that the voter will not be misled as to its purpose, and can cast an intelligent and informed ballot." Advisory Op. to Att'y Gen.—Fee on Everglades Sugar Prod., 681 So. 2d 1124, 1127 (Fla. 1996). Accordingly, in reviewing the ballot title and summary, this Court asks two questions: (1) whether the ballot title and summary fairly inform the voter of the chief purpose of the amendment; and (2) whether the language of the ballot title and summary misleads the public. Prop. Tax Cap, Unless Voter Approved, 2 So. 3d at 974-75. "While the ballot title and summary must state in clear and unambiguous language the chief purpose of the measure, they need not explain every detail or ramification of the proposed amendment." Id. at 974.

After careful scrutiny of the text of the ballot title and summary, and the text of the amendment, and after consideration of all the arguments of counsel, we conclude that the ballot title and summary in this case do not run afoul of these requirements. Without considering the merits of the measure, we find that the title and summary clearly and unambiguously inform the voter that the amendment will establish a constitutional right for electricity consumers "to own or lease solar equipment installed on their property to generate electricity for their own use"

while simultaneously retaining the government's ability to regulate that right. Neither the ballot title nor the summary misleads the public by suggesting that the amendment is necessary for consumers to be able to own or lease solar equipment installed on their property to generate electricity for their own use. Rather, the ballot title accurately identifies the proposed amendment as creating a framework of "Rights of Electricity Consumers <u>Regarding</u> Solar Energy Choice" and the ballot summary accurately tells the voter that "[t]his amendment establishes a right under Florida's constitution[,]" not that it allows solar energy use by consumers for the first time. In addition, the ballot summary accurately tells the voter that "State and local governments shall <u>retain</u> their abilities to protect consumer rights and public health, safety and welfare, and to ensure that consumers who do not choose to install solar are not required to subsidize the costs of backup power and electric grid access to those who do."

The opponents contend that the ballot title and summary mislead the voter by giving the false impression that he or she must vote for the amendment to maintain a right that already exists under article I, section 2 of the Florida Constitution. We disagree. Nothing within the Florida Constitution currently provides electricity consumers with the specific right "to own or lease solar equipment installed on their property to generate electricity for their own use." Although the Florida Constitution provides a general right to "acquire, possess and

protect property[,]" this Court has recognized that it does not secure the right to own any specific good or asset. Art. I, § 2, Fla. Const.; see Shriners Hosps. for Crippled Children v. Zrillic, 563 So. 2d 64, 68 (Fla. 1990) (recognizing that "even constitutionally protected property rights are not absolute, and 'are held subject to the fair exercise of the power inherent in the State to promote the general welfare of the people through regulations that are reasonably necessary to secure the health, safety, good order, [and] general welfare.' " (quoting Golden v. McCarty, 337 So. 2d 388, 390 (Fla. 1976))). It follows that nothing within article I, section 2 of the Florida Constitution necessarily precludes the State under its inherent police powers from entirely barring electricity consumers from owning or leasing solar equipment installed on their property to generate electricity for their own use.

It is undeniable that a constitutional right to a specific type of property—by virtue of its enumeration and in the absence of language within the Florida Constitution to the contrary—necessarily receives greater protection than a general constitutional right to property. Compare art. I, § 2, Fla. Const. (establishing a general right to acquire, possess, and protect property), and Haire v. Florida Dept. of Agric. & Consumer Servs., 870 So. 2d 774, 783 (Fla. 2004) (recognizing that this Court uses the "reasonable relationship test . . . to evaluate statutes and regulations that infringe on property rights"), with art. I, § 8, Fla. Const. (establishing a specific constitutional right to keep and bear arms), and Norman v.

- 17 -

State, 159 So. 3d 205, 222 (Fla. 4th DCA 2015) (applying a heightened level of scrutiny to a statute implicating the right to keep and bear arms), review granted, 182 So. 3d 634 (Fla. 2015). Any other conclusion would render the enumeration of a constitutional right to a specific type of property superfluous.

Accordingly, by enshrining a constitutional right "to own or lease solar equipment installed on their property to generate electricity for their own use" in the Florida Constitution, the proposed amendment provides stronger protection for solar energy consumers than previously existed under the Florida Constitution. Although State and local governments retain their abilities under the proposed amendment to protect public health, safety and welfare, the establishment of this specific constitutional right precludes State and local governments from entirely barring electricity consumers from "own[ing] or leas[ing] solar equipment installed on their property to generate electricity for their own use" under their retained police powers. No language within the proposed amendment indicates otherwise.

The opponents also contend that the proposed amendment is misleading under Evans because the ballot title and summary purport to establish a right that already exists without informing the voter that the amendment elevates an existing right to a constitutional level. We disagree. In Evans, this Court explained as follows:

> The summary states that it "establishes" citizen's rights in civil actions. This is clearly inaccurate as applied to provision b, relating to

- 18 -

> summary judgment. This provision has long been established in Florida. The effect of the amendment is to elevate this procedural rule to the status of a constitutional right, protected in the same manner and to the same degree as are other constitutional rights. We do not pass on the merits of the effect nor do we question the citizens' right to do exactly this. We do find, however, that the voter must be told clearly and unambiguously that this is what the amendment does.

457 So. 2d at 1355. We concluded that the ballot summary in Evans was misleading because it claimed to "establish[]" a citizen's rights in civil actions, thereby implying that it was creating an entirely new right that would not exist otherwise, without disclosing that the provision relating to summary judgment already existed under the Florida Rules of Procedure. In contrast, the ballot summary in this case is not misleading because it explicitly claims to "establish[] a right under Florida's constitution" and no constitutional provision currently provides electricity consumers with the specific right "to own or lease solar equipment installed on their property to generate electricity for their own use." Moreover, no statute or rule in Florida currently provides electricity consumers with the specific right "to own or lease solar equipment installed on their property to generate electricity for their own use." See, e.g., § 163.04, Fla. Stat. (2015) (limiting the power of local governments and homeowner associations to prohibit the installation of "solar collectors, clotheslines, or other energy devices" without addressing the ownership or lease of solar equipment or the use of solar electricity); Fla. Admin. Code R. 25-6.065 (delineating the conditions that a

- 19 -

customer must satisfy in order to be eligible for expedited grid interconnection and net-metering without creating a right for consumers to own or lease solar equipment or addressing the installation of solar equipment).

The opponents assert that the ballot title and summary contain misleading terms, some of which purportedly constitute political or emotional rhetoric. However, when read within the full context of the ballot title and summary, none of the terms contained within the ballot title and summary are misleading and none of the terms constitute political or emotional rhetoric. The opponents also claim that the ballot summary is misleading with respect to the current abilities of State and local governments to regulate the use of solar energy. We disagree. The ballot summary clearly states that both "State and local governments shall retain their abilities"—whatever they are—"to protect consumer rights and public health, safety and welfare, and to ensure that consumers who do not choose to install solar are not required to subsidize the costs of backup power and electric grid access to those who do." Additionally, nothing in the proposed amendment requires State or local governments to take any specific action—or adopt any particular policy— regarding their retained abilities. The proposed amendment leaves such decisions to government policymakers.

This Court has long explained that our duty is to uphold the proposal unless it can be shown to be clearly and conclusively defective. Medical Marijuana I, 132

So. 3d at 795.  The proposal has not been shown to be clearly and conclusively defective in any respect.  Accordingly, the ballot title and summary are approved for placement on the ballot.

## V.  FINANCIAL IMPACT STATEMENT

The proponents of the proposed amendment all assert that the Financial Impact Statement complies with section 100.371, Florida Statutes (2015), in their briefs, and the opponents do not contest the validity of the Financial Impact Statement.  Nevertheless, this Court has an independent obligation to review the Financial Impact Statement to ensure that it is clear and unambiguous and in compliance with Florida law.  See Medical Marijuana II, 181 So. 3d at 479.  Article XI, section 5(c) of the Florida Constitution states that "[t]he legislature shall provide by general law, prior to the holding of an election pursuant to this section, for the provision of a statement to the public regarding the probable financial impact of any amendment proposed by initiative pursuant to section 3" of article XI of the Florida Constitution.

A Financial Impact Statement must estimate the "increase or decrease in any revenues or costs to state or local governments resulting from the proposed initiative."  § 100.371(5)(a), Fla. Stat. (2015).  The Financial Impact Statement must be "clear and unambiguous" and "no more than 75 words in length[.]" § 100.371(5)(c)2., Fla. Stat. (2015).  Therefore, this Court's review of the Financial

Impact Statement is a narrow analysis of "whether the statement is clear and unambiguous, consists of no more than seventy-five words, and is limited to addressing the estimated increase or decrease in any revenue or costs to state or local governments." Prop. Tax Cap, Unless Voter Approved, 2 So. 3d at 976.

The Financial Impact Statement in this case states that "[t]he amendment is not expected to result in an increase or decrease in any revenues or costs to state and local government." The Financial Impact Statement is twenty-two words long, complying with the seventy-five-word limit. It also clearly and unambiguously explains that no change in revenues or costs is expected. Accordingly, we hold that the Financial Impact Statement complies with section 100.371(5), Florida Statutes (2015). See Advisory Op. to Att'y Gen. re Extending Existing Sales Tax to Non-Taxed Servs. Where Exclusion Fails to Serve Pub. Purpose, 953 So. 2d 471, 491 (Fla. 2007) (concluding that a proposed Financial Impact Statement stating that "[t]he amendment will not have an impact on state and local government revenues or expenses" did not violate Florida law).

## VI. CONCLUSION

For the reasons set forth above, we conclude that the initiative petition and ballot title and summary meet the legal requirements of article XI, section 3 of the Florida Constitution, and section 101.161(1), Florida Statutes (2015). Further, the Financial Impact Statement complies with section 100.371(5), Florida Statutes

(2015).  Therefore, we approve the proposed amendment and Financial Impact Statement for placement on the ballot.

It is so ordered.

LABARGA, C.J., and LEWIS, CANADY, and POLSTON, JJ., concur.
PARIENTE, J., dissents with an opinion, in which QUINCE and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

PARIENTE, J., dissenting.

Let the pro-solar energy consumers beware.  Masquerading as a pro-solar energy initiative, this proposed constitutional amendment, supported by some of Florida's major investor-owned electric utility companies, actually seeks to constitutionalize the status quo.[1]  The ballot title is affirmatively misleading by its focus on "Solar Energy Choice," when no real choice exists for those who favor expansion of solar energy.  The ballot language is further defective for purporting

---

1. Due to the use and definitions of certain terms within the proposed amendment, it may actually have the effect of <u>diminishing</u> some rights of solar energy consumers.  For example, a group of environmental groups who filed a brief in opposition assert that this amendment will eliminate "pay-by-the-watt" leases by narrowly defining "lease," rendering many ordinary consumers unable to afford the "tens of thousands of dollars to purchase solar panels."  They explain that "pay-by-the-watt leases" obligate a homeowner to pay only for the electricity actually provided by the solar panels.  <u>See</u> Answer Brief of Progress Florida, Inc., Environment Florida, Inc., and the Environmental Confederation of Southwest Florida, Inc., at 2-6.

to grant rights to solar energy consumers that are illusory; and failing, as required, to clearly and unambiguously set forth the chief purpose of the proposed amendment—to maintain the status quo favoring the very electric utilities who are the proponents of this amendment.

As I more fully explain, the biggest problem with the proposed amendment "lies not with what the [ballot] summary says, but rather, with what it does not say." Askew v. Firestone, 421 So. 2d 151, 156 (Fla. 1982). What the ballot summary does not say is that there is already a right to use solar equipment for individual use afforded by the Florida Constitution and existing Florida statutes and regulations. It does not explain that the amendment will elevate the existing rights of the government to regulate solar energy use and establish that regulatory power as a constitutional right in Florida. This is a glaring omission, especially since rights enshrined in the Constitution are generally intended to limit, rather than grant, governmental power. Bush v. Holmes, 919 So. 2d 392, 414 (Fla. 2006) (citing Chiles v. Phelps, 714 So. 2d 453, 458 (Fla. 1998)). This ballot initiative is the proverbial "wolf in sheep's clothing."

The ballot initiative is titled "Rights of Electricity Consumers Regarding Solar Energy Choice," and is sponsored by "Consumers for Smart Solar" and supported by Duke Energy Florida, Florida Power & Light Co., Gulf Power Co., and Tampa Electric Company. At only eight words in length, the ballot title is

affirmatively misleading because it focuses only on alleged rights related to a consumer's choice to use solar energy. But it does not illuminate the real purpose, namely, to place a critical restriction on those rights through elevating state and local governments' police powers to regulate solar energy to the constitutional level. In other words, what "rights" are purportedly given to consumers are severely limited by constitutionally protecting the local and state governments' ability to fully regulate individual consumers' solar energy use as part of their power to protect "public health, safety and welfare," and by preventing "subsidi[es]" on non-solar users.

The second part of the amendment acts as a significant restriction on the expansion of solar energy rights and "choice[s]" by embedding in the Constitution the government's unbridled discretion to regulate private solar energy use. Yet, any indication of this restriction is glaringly excluded from the ballot title, making it affirmatively misleading.

In addition, the ballot title was artfully drafted to emphasize "choice." But what "choice" is being provided through this amendment? At one point, the "choice" intended by the ballot title appears to have been between this amendment and the amendment in Advisory Opinion to the Att'y Gen. re Limits or Prevents Barriers to Local Solar Electricity Supply, 177 So. 3d 235 (Fla. 2015), sponsored by "Floridians for Solar Choice." The Limits or Prevents Barriers amendment,

- 25 -

which was intended to remove legal and regulatory barriers to local solar-generated electricity users who seek to sell a limited amount of solar-generated electricity to neighboring properties, id. at 243, was a driving force for the present ballot initiative. But that amendment, which we approved, will not appear on the November 2016 ballot because the sponsor did not obtain the necessary signatures.[2] In other words, with only this solar energy amendment appearing on the ballot, there really is no "choice" other than to preserve the status quo.

The language of the amendment does not appear to provide any "choice" or provide for the "rights" of electricity consumers who make the "choice" to install solar. For those electricity consumers, the amendment provides only one narrow right: to own or lease solar equipment for their own use. The only "choice" is whether to accept this narrow right or reject it.

At the same time, the ballot summary uses a term that the amendment does not define: "subsidize." It appears that the amendment's lack of a definition was intentional, especially since definitions are provided for every other substantive

---

2. While the identity of the sponsors and supporters of a given amendment is not a factor in determining if the ballot title and summary are misleading, the supporters of this amendment, such as Duke Energy Florida, Gulf Power Company, and Tampa Electric Company, that were among the opponents of the Limits or Prevents Barriers amendment, acknowledge that the Limits or Prevents Barriers amendment was an "impetus of sorts" for the present ballot initiative. Corrected Ans. Br. of Duke Energy Fla., et al. at 1.

term, including the commonly understood term "consumer." The sponsor of the amendment asserts that the term "subsidize" was intended to refer to the concern that non-solar consumers could be faced with a higher proportion of the fixed costs associated with maintaining the power grid, as a result of solar consumers' reduced, but still existent, reliance on the power grid for backup power. Putting aside that this concern is speculative and not borne out in any present reality, the use of the term "subsidize" suggests that consumers who use solar energy necessarily impose a financial burden on non-solar consumers and implies that this undesirable consequence of the right to own or lease solar equipment must be remedied through the proposed amendment.

Further, the average voter's understanding of what "subsidize" means is highly unlikely to conform to what the sponsor claims the undefined term means. In common parlance, the term "subsid[y]" is often understood as government programs such as subsidized housing and food stamps, as well as tax breaks, corporate subsidies, and agricultural subsidies—often controversial topics with sometimes negative connotations. The ballot summary's use of the undefined term "subsidize" allows the potential for broad and shifting interpretations by the state and local governments empowered to regulate and prevent these "subsidi[es]." It is therefore misleading.

Beyond my specific concerns with the affirmatively misleading use of the terms "choice" and "subsidize" in the ballot title and summary, the major flaw in the ballot title and summary is that they fail to accurately inform the voter of the chief purpose and effect of the proposed amendment. In evaluating a proposed amendment:

> The proper analysis to assess whether [the] ballot title and summary meet this requirement focuses on two questions: (1) whether the ballot title and summary, in clear and unambiguous language, fairly inform the voter of the chief purpose of the amendment; and (2) whether the language of the title and summary, as written, misleads the public.

Advisory Op. to Att'y Gen. re Prohibiting State Spending for Experimentation That Involves the Destruction of a Live Human Embryo, 959 So. 2d 210, 213-14 (Fla. 2007) (citing Advisory Op. to Att'y Gen. re Fla. Marriage Prot. Amend., 926 So. 2d 1233, 1236 (Fla. 2006)).

Even though the language of the ballot summary is consistent with and nearly verbatim to the language used in the amendment, the problem is with what the ballot summary (and actual language of the amendment) fails to say. See Advisory Op. to Att'y Gen. re Casino Authorization, Taxation and Regulation, 656 So. 2d 466, 469 (Fla. 1995) (concluding language of the ballot summary suggesting the amendment was necessary to prohibit casinos in the state was "misleading not because of what it says, but what it fails to say").

The ballot summary does not make clear that the right of homeowners to own solar equipment for their own use already exists. As a result, it creates a false impression that a vote in favor of the amendment is necessary for the voter to be afforded the right at all. Many voters may indeed believe that there is no existing right to the use of solar energy equipment since, by the end of 2014, only 8,500 Florida consumers—a miniscule percentage of all Florida electricity consumers—were using solar power to generate electricity. Initial Br. of Fla. Solar Energy Indus. Ass'n, at 22.[3]

The ballot title and summary plainly fail to acknowledge that consumers already have a right to own solar equipment for individual use by virtue of article I, section 2, of the Florida Constitution, which provides the right to own property generally. The right to own solar equipment is also afforded to consumers through other statutes and regulations. See § 366.91, Fla. Stat. (2015); Fla. Admin. Code R. 25-6.065. If the amendment is passed, it would elevate this existing right to a constitutional level.

The problem with the amendment in this ballot initiative is not that a specific property right cannot be placed in the Florida Constitution. Nor is it that the

---

3. As the opponents explain, this is an extremely small percentage of consumers in the "Sunshine State," as compared, for example, to the state of New Jersey, which has over 40,000 solar energy consumers. See Initial Br. of Fla. Solar Energy Indus. Ass'n, at 22.

placement of a specific property right in the Constitution would not afford that right greater protection than would be afforded by the general right to property. Rather, the problem lies in the fact that the ballot title and summary fail to fairly inform voters that this is what the amendment does.  This Court has held ballot summaries defective for failing to inform the voter of an existing right or prohibition or that the amendment would elevate the right or prohibition to a constitutional level.  When that failure has existed in amendments, we have struck them from the ballot.  See, e.g., Casino Authorization, 656 So. 2d 466; Evans v. Firestone, 457 So. 2d 1351 (Fla. 1984).  In Casino Authorization, we explained that ballot titles and summaries are defective in cases of affirmative omissions as well as misleading commissions:

> In Askew v. Firestone, 421 So. 2d 151 (Fla. 1982), the legislature attempted to initiate a constitutional amendment that would remove the constitution's absolute ban on lobbying by a former government officeholder.  The proposed amendment would prohibit lobbying unless the affected person met certain financial disclosure requirements.  We found that the ballot summary was defective because it failed to inform the voter that the existing constitution already banned lobbying.  We concluded that the problem with the summary "lies not with what the summary says, but, rather, with what it does not say."  Id. at 156.  Turning to the instant case, the summary creates the false impression that casinos are now allowed in Florida. It fails to inform the voter that most types of casino gaming are currently prohibited by statute.  See generally ch. 849, Fla. Stat. (1993).  Without this admission, the summary suffers from the same defect as did the summary in Askew.

656 So. 2d at 469 (emphasis added).

- 30 -

In <u>Evans</u>, the proposed amendment would have had the effect of elevating the summary judgment rule already contained in Florida Rule of Civil Procedure 1.510 to a constitutional right. 457 So. 2d at 1354. This Court determined the ballot summary was therefore defective, explaining:

> The summary states that it "establishes" citizen's rights in civil actions. This is clearly inaccurate as applied to provision b, relating to summary judgment. This provision has long been established in Florida. <u>The effect of the amendment is to elevate this procedural rule to the status of a constitutional right, protected in the same manner and to the same degree as are other constitutional rights.</u> We do not pass on the merits of the effect nor do we question the citizens' right to do exactly this. <u>We do find, however, that the voter must be told clearly and unambiguously that this is what the amendment does.</u>

<u>Id.</u> at 1355 (emphasis added). The ballot summary in this case similarly fails to clearly and unambiguously inform voters that this amendment is not creating a new right. The ballot summary would lead voters to believe that a vote in favor of the amendment is necessary to advance the use of solar energy in Florida.

On the other side of the equation is the failure to inform voters of the true effect of elevating the state and local governments' police powers in the area of solar regulation to a constitutional level. The impact is that the constitutional right that the amendment purportedly creates in the first section is seriously diminished in the second section. The proposed amendment would have the practical effect of maintaining the status quo with the balance of power in the hands of the utility companies.

As we have explained repeatedly over the last 100 years, the Florida

Constitution limits, rather than grants, governmental powers:

> The Constitution of this state is <u>not a grant of power to the Legislature</u>, but a limitation only upon legislative power, and unless legislation be clearly contrary to some express or necessarily implied prohibition found in the Constitution, the courts are without authority to declare legislative Acts invalid. The Legislature may exercise any lawmaking power that is not forbidden by organic law.
>
> <u>Savage v. Board of Public Instruction</u>, 133 So. 341, 344 (1931) (citing <u>State v. [Bryan]</u>, 39 So. 929 (Fla. 1905); <u>Jordan v. Duval Cty.</u>, 66 So. 298 (Fla. 1914); and <u>Stone v. State</u>, 71 So. 634 (Fla. 1916)). <u>The legislature's power is inherent, though it may be limited by the constitution.</u> Thus, the legislature "looks to the Constitution for limitations on its power and if not found to exist its discretion reasonably exercised is the sole brake on the enactment of legislation." <u>State v. Board of Pub. Instruction</u>, 170 So. 602, 606 (Fla. 1936).

<u>Chiles</u>, 714 So. 2d at 458 (emphasis added). Therefore, inherent in the

Constitution is the recognition that governmental entities already have the power to

enact reasonable regulations.

In contrast to the present proposed amendment, in other constitutional

amendments that this Court has approved, the power given to the government is

limited to a proscribed framework and does not diminish the right the amendment

purports to establish. For example, article X, section 20, which prohibits tobacco

smoking in enclosed indoor workplaces, specifies exactly what it empowers the

government to do. Art. X, § 20, Fla. Const. That amendment does not establish a

constitutional right and then give the government unbridled discretion to <u>limit</u> expansion of that right. Rather, it establishes a constitutional right to <u>smokefree</u> workplaces and gives the government the power to advance that right even further. <u>See</u> art. X, § 20(d), Fla. Const. ("Nothing herein shall preclude the Legislature from enacting any law constituting or allowing <u>a more restrictive regulation of tobacco smoking</u> than is provided in this section." (emphasis added)). Another example is the proposed amendment this Court approved in <u>In re Advisory Op. to Att'y Gen. re Use of Marijuana for Debilitating Med. Conditions</u>, 181 So. 3d 471 (Fla. 2015). There, the proposed amendment provided that the Department of Health "shall issue reasonable regulations necessary for the implementation and enforcement" of the proposed amendment "to ensure the availability and safe use of medical marijuana by qualifying patients." <u>Id.</u> at 475. The amendment addressed specific governmental duties within a framework meant to <u>advance</u> the right to the use of medical marijuana created by the amendment, and did not grant the government the broad regulatory power to "protect consumer rights and public health, safety and welfare." Despite the contentions of the sponsor and the majority, the present amendment lacks a framework both of rights and regulations of those rights. <u>See</u> majority op. at 16. To the contrary, the amendment gives constitutional protection to the government's unbridled discretion to exercise its

- 33 -

police powers as it sees fit to regulate and restrict the very solar energy right the amendment purports to provide.

The combined effect of constitutionalizing a very narrow, but already existing right, and simultaneously constitutionalizing the government's powers to regulate when Floridians avail themselves of that right, is the status quo. Even the Financial Impact Estimating Conference, which prepared the Financial Impact Statement in this case, opined that the substantive effect of this amendment would be to "establish[] a constitutional right to own or lease solar equipment to generate electricity that is consistent with current law and administration." (Emphasis added.) The Conference also determined that the amendment would not result in an increase or decrease in any revenues or costs to the state and local government. Clearly, this is an amendment geared to ensure nothing changes with respect to the use of solar energy in Florida—it is not a "pro-solar" amendment.

The merits and wisdom of adding an amendment to the Florida Constitution that provides a very narrow right to own or lease solar equipment, subject to the state and local government's constitutionalized right to regulate and restrict that right, are not before the Court. Those are issues for the voters to decide. But voters cannot make an informed decision unless they are provided a ballot title and summary that are clear and unambiguous, not affirmatively misleading or hiding

the ball as to the chief purpose and effect of the amendment. As we have recently

stated:

> The ballot title and summary must each "stand on its own merits and not be disguised as something else." Askew v. Firestone, 421 So. 2d 151, 156 (Fla. 1982). The ballot title and summary may not " 'fly under false colors' or 'hide the ball' with regard to the true effect of an amendment." Fla. Dep't of State v. Slough, 992 So. 2d 142, 147 (Fla. 2008) (quoting Armstrong v. Harris, 773 So. 2d 7, 16 (Fla. 2000)). The purpose of this requirement is "to assure that the electorate is advised of the true meaning, and ramifications, of an amendment." Askew, 421 So. 2d at 156.

Limits or Prevents Barriers, 177 So. 3d at 245.

If voters favor the status quo and want to elevate this status quo to a

constitutional level, then voters should vote for this amendment. The ballot title

and summary of this pro-utility amendment fail the test of advising voters of the

"true meaning, and ramifications" of the amendment and should be struck. See

Askew, 421 So. 2d at 156. Accordingly, I dissent.

QUINCE and PERRY, JJ., concur.

Two Cases:

Original Proceeding – Advisory Opinion – Attorney General

Pamela Jo Bondi, Attorney General, Gerry L. Hammond, Senior Assistant Attorney General, and Rachel Erin Nordby, Deputy Solicitor General, Tallahassee, Florida,

for Petitioner

Raoul G. Cantero, III, Thomas Neal McAliley, and Quinshawna S. Landon of White & Case LLP, Miami, Florida,

for Consumers for Smart Solar, Inc., Sponsor

William Bartow Willingham and Michelle Lynn Hershel, Tallahassee, Florida, and David Bruce May, Jr. and Tiffany Roddenberry of Holland & Knight LLP, Tallahassee, Florida, on behalf of the Florida Electric Cooperatives Association, Inc.; Daniel Elden Nordby of Shutts & Bowen LLP, Tallahassee, Florida, on behalf of The 60 Plus Association, Inc.; Barry Scott Richard of Greenberg Traurig, P.A., Tallahassee, Florida, and Alvin Bruce Davis of Squire Patton Boggs, LLP, Miami, Florida, on behalf of Florida Power & Light Company; Major Best Harding and James Dawson Beasley of Ausley & McMullen, Tallahassee, Florida, on behalf of Tampa Electric Company; John Todd Burnett, Deputy General Counsel, Saint Petersburg, Florida, on behalf of Duke Energy Florida; Jeffrey Alan Stone and Terrie Springer Didier of Beggs & Lane, R.L.L.P., Pensacola, Florida, and Kenneth Bradley Bell of Gunster, Yoakley & Stewart, P.A., Tallahassee, Florida, on behalf of Gulf Power Company,

as Proponents

Robert Lowry Nabors, William Clark Garner, and Carly J. Schrader of Nabors, Giblin & Nickerson, P.A., Tallahassee, Florida, on behalf of Floridians for Solar Choice, Inc.; Bradley Ian Brustman Marshall and David George Guest of Earthjustice, Tallahassee, Florida, on behalf of Progress Florida, Inc., Environment Florida, Inc., and The Environmental Confederation of Southwest Florida, Inc.; Ennis Leon Jacobs, Jr., Tallahassee, Florida, on behalf of Florida Solar Energy Industries Association; and Warren Lee Rhea, Gainesville, Florida, on behalf of Florida Energy Freedom, Inc.,

as Opponents